# Richmond

## HARRY A. SHOCKEY V. MILTON R. WESTCOTT.

April 25, 1949.

Record No. 3451.

Present, All the Justices.

The opinion states the case.

*Robert A. Hutchison* and *Charles Pickett,* for the plaintiff in error.

*John Barton Phillips,* for the defendant in error.

STAPLES, J., delivered the opinion of the court.

The defendant in error, Milton R. Westcott, was defendant below and will be hereinafter so called. In 1940 he was the owner of an 80% interest in the Westcott Nursery Company. A receivership suit was then pending in the circuit court of Fairfax County involving certain claims against the company, and a receiver had been appointed to take possession of and operate the business. The plaintiff, Harry A. Shockey, was a practicing attorney at law and the defendant engaged him to represent his interests in the receivership suit. A written contract of employment was entered into on May 3, 1940. A part of the compensation of the plaintiff consisted of a retainer fee of $5000, evidenced by a note payable upon the termination of the receivership and secured by a lien upon certain property of the defendant. The contract also contained the following provision:

"After the settlement of the said suit and the claim of the party of the first part is established, the party of the first part agrees to pay to the party of the second part a fee commensurate with the services rendered and the results accomplished, taking into consideration the value of said nursery, * * *."

After the discharge of the receiver, there was added to the contract the following written addendum dated August 2, 1941:

"It is mutually agreed between Harry A. Shockey and Milton R. Westcott, the parties to the above contract for fee dated May 3, 1940, that this agreement shall become a part thereof, and that the total fee shall be Fifteen Thousand Dollars together with the furnishing and planting of nursery stock to be selected by Harry A. Shockey on the following premises: 6255 Lee Highway, 411 Lee Boulevard, 914 North Taylor Street, 1601 North McKinley Road, 2606 North 11th Street, and 6414 17th Street, North."

The principal question involves the interpretation of the words contained in the addendum: "* * * together with the furnishing and planting of nursery stock to be selected by Harry A. Shockey." In the year 1946, about five years after the signing of the addendum, the plaintiff selected a considerable quantity of shrubbery for two of the properties specified, which the defendant furnished and planted, the value being about $250.

In the spring of 1947, the plaintiff telephoned to the defendant and asked him to recommend a landscape architect, but according to defendant's testimony, he did not indicate that he intended to employ an architect for the purpose of guiding the defendant in furnishing and planting nursery stock for the lawn grounds at plaintiff's home. The plaintiff testified, however, that he did indicate that purpose. He employed the architect recommended by the defendant and had him prepare an elaborate blueprint or plan for landscaping the property. After the blueprint was completed, he supplied the defendant with a copy of it and requested that he proceed to do the work and furnish the nursery stock therein called for. The architect's plan went far beyond the furnishing and planting of nursery stock. It also required the removal of sixty-one trees and plants, which were then growing on the plaintiff's property. These were to be relocated and replanted with a ball of earth around the roots of each of them. In addition, the plan called for the furnishing and planting of 2401 new trees and shrubs of various sizes.

The defendant rejected the plaintiff's request that he provide the material and work called for by the plan. He testified: "I told him I couldn't see it. The thing would run $25,000, never did anything like that in my life. It was ridiculous. I don't have the workers and the material. I don't think I have 5 per cent of the material on that. I don't think any nursery in the country has that without buying quite a portion of it." Defendant also testified: "We don't do jobs like that and never have done jobs like that."

The plaintiff then instituted this action of covenant to recover $25,000 damages for the defendant's alleged breach of the contract.

The trial of the case resulted in a verdict for the plantiff for $5000. The plaintiff moved the court "to set aside the verdict as inadequate and enter judgment for the sum of $24,800, being the minimum amount the evidence shows plaintiff is entitled to recover."

On the other hand, the defendant moved "that the verdict be set aside as contrary to the law and evidence on the ground that there isn't any evidence that would support that verdict of $5000."

No evidence was introduced by either party respecting the actual services rendered by the plaintiff, or their value.

The court overruled both motions and entered judgment on the verdict in favor of the plaintiff.

The plaintiff specifies nine assignments of error, but they all involve and are predicated upon the action of the trial court in permitting the introduction of parol evidence to explain the defendant's understanding of the meaning of the phrase contained in the addendum to the contract, "together with the furnishing and planting of nursery stock to be selected by Harry A. Shockey." It is the contention of the plaintiff that this language is clear, complete, and unambiguous; that in plain and unmistakable terms it means "that the plaintiff was to 'select' and the defendant was to 'furnish and plant' the nursery stock so selected at the designated places." The trial court took the view, however, that the plaintiff in his own testimony had undertaken to explain the meaning of the addendum to the contract and what occurred at and before the time it was signed, and the defendant had the right to give his version of the matter. Plaintiff contends that this testimony was elicited from him by defendant's counsel on cross-examination, and therefore did not open up the door for additional evidence of a similar nature. But he testified on direct examination by his own counsel that, when he wrote the addendum, he left a blank space to be filled in to designate the amount of the

fee, and that the defendant himself had inserted the words, "fifteen thousand dollars." Upon cross-examination the plaintiff was asked the question: "Then why was the $15,000 written in by him" the defendant? It will be observed from his testimony, which we will set out at some length, that the plaintiff did not confine himself to matters which were responsive to the question propounded to him. Instead, he went far afield and explained that "the great discussion was at that time that he had no money, which he didn't have, and he said, 'I do have nursery stock,' and he said, 'I can plant nursery stock around your properties,' and he said, 'I haven't much money at this time.'

"So I says, 'Now, Milton,' I said, 'Here is the contract and here is the agreement we have entered in. You go on and fill in the amount.'

"He says, 'Now Harry, as I tell you, I haven't much money at this time.' He says, 'All I want you to do is trust me.' He says, 'You trust me.' He says, 'I will take care of you after I realize on my investments and my properties that you have recovered for me.

"He said, 'I am only going to put $15,000 in here now,' and he says, 'Just trust me, I will take care of you.' "

In reply to a question whether the nursery stock was not incidental to the fee, the plaintiff answered:

"No, sir. He said he had nursery stock but no money. He says, 'I will fix your place up here as a show place and it will be a credit to me in my business as well as a credit to you—benefit to you.' I said, 'I am not after anything elaborate, but I do want it fixed up nice.' "

And again: "Q. That was your understanding, that he had nursery stock he could put around your house?

"A. Yes. He told me, 'Whatever you select,' and he gave me some books to select from, and he said, 'You take these books and here are the pictures in them.' I don't know whether I have them in my file here—no, but they are in the huge file I have at my office. They are the nursery books he brought to me at the time. He said, 'Here

is a group of nursery books when you get ready to select your nursery stock.' He said, 'Here they are.' "

It is thus apparent that the plaintiff himself, who is a lawyer, volunteered his testimony as above in support of his contention that the defendant contemplated an extensive planting of nursery stock on plaintiff's home property, and also that his selection of such stock was not to be restricted to that on hand at the nursery but might be chosen from books or catalogues of other nurseries. To none of this testimony did his counsel object. It was not until later on in the cross-examination of the plaintiff, when he was asked the question whether he had had anyone go to the defendant's place and select the desired nursery stock, or whether he had had the architect get in touch with him to find out what stock the defendant had on hand, that the plaintiff's counsel objected that the effect of testimony along that line would be to vary or contradict the written contract. An exception was taken to the action of the trial court in overruling the objection.

While the defendant was testifying, he was asked by his counsel "what discussion, if anything, took place at that time about fee or in cash or in nursery stock, and so on?" The plaintiff's counsel renewed the objection, which was overruled, and properly so, we think, on the ground that the plaintiff himself had testified at considerable length on the same subject, and that, therefore, the defendant was entitled to rebut that testimony. "One who has given evidence of conversations which took place between the parties to a written agreement before the agreement was made cannot object to the other party giving his own version of the same conversations." 20 Am. Jur. 964. *Richeson* v. *Wood*, 158 Va. 269, 163 S. E. 339, 82 A. L. R. 1189; *Bogk* v. *Gassert*, 149 U. S. 17, 25, 13 S. Ct. 738, 37 L. Ed. 631, 635.

The trial court further expressed the opinion that the language used in the addendum to the contract was indefinite and ambiguous, in that it failed to designate from what nursery stock the plaintiff was to make the selection and

placed no limits whatever upon the quantity which he could select.

We think the ruling of the trial court was unquestionably correct. While it is elementary that parol evidence is not admissible to explain or undertake to qualify a written argeement when it constitutes a complete statement of the bargain, it is equally as elementary that the rule does not apply where the writing on its face is ambiguous, vague or indefinite, or does not embody the entire agreement. In such a case, parol evidence is always admissible, not to contradict or vary the terms, but to establish the real contract between the parties. *Marsteller* v. *Warden & Hailey*, 115 Va. 353, 79 S. E. 332; *Sale* v. *Figg*, 164 Va. 402, 180 S. E. 173; *Protestant Episcopal High School* v. *Parrish*, 168 Va. 103, 190 S. E. 146. See also numerous cases cited in 7 Michie's Digest of Virginia and West Virginia Reports, and Vol. 5 of the permanent supplement thereto, under the title "Parol Evidence." This view is expressed generally by the courts in other states; see 32 C. J. S., pages 852, 872, 909, 911; 20 Am. Jur., "Evidence", section 1147.

That the meaning of the addendum to the contract is doubtful and that its provisions are indefinite appears from plaintiff's voluntary testimony. It established the fact that the reason the defendant desired to pay a part of his compensation in the form of nursery stock was because he did not have money available for that purpose and did have the nursery stock. It was a reasonable inference, therefore, that it was not the defendant's intention to undertake to provide nursery stock which would require the outlay of money because he had none. Clearly, therefore, the plaintiff's own testimony rendered it doubtful that the defendant intended to provide any stock for which he would be compelled to make a cash outlay, and therefore it was proper to allow the defendant to testify in rebuttal of the plaintiff's testimony.

The plaintiff makes no claim that, if the testimony of the defendant was admissible, the evidence, taken as a whole, is not sufficient to sustain a finding by the jury that

the disputed phrase in the contract obligated the defendant to furnish stock from his own nursery alone, and only such quantity as was reasonable under the circumstances. Since we hold the defendant's testimony was admissible, it follows that the trial court properly overruled the motion of the plaintiff to set aside the verdict on the ground that the contract must be construed as conferring upon the plaintiff the right to call for an unlimited quantity of such material. We do not think the disputed phrase in the contract can properly be interpreted as obligating the defendant, as a matter of law, to convert the plaintiff's lawn into a sort of fairyland, as the plan of the architect apparently contemplates.

The defendant has assigned as cross-error the refusal of the trial court to set aside the verdict of the jury awarding the plaintiff damages of $5000 against him. He contends that there is no evidence to support a finding that he breached his covenant, and the evidence shows that he has neither failed nor refused to perform it. He argues that the demand of the plaintiff was unjustified by the contract, as shown by the verdict of the jury, and that therefore the defendant's refusal to comply with such demand did not amount to a breach.

The testimony of the defendant in rejecting the plaintiff's demand, which has been quoted, *supra,* coupled with the testimony of the plaintiff that defendant directed him to have the work done by some other nursery company, and that defendant made no counter-offer to supply what he considered to be a reasonable compliance with the contract, was sufficient to justify the jury in finding that the defendant had repudiated the entire contract to furnish and plant nursery stock on any of the properties of plaintiff. As to the other properties designated in the addendum, the judgment of the court must be considered as embracing any damage sustained by the plaintiff by reason of the refusal of the defendant to furnish nursery stock for them also. The record shows that the learned judge of the

trial court and counsel for the plaintiff agreed that the recovery of damages in this action would preclude any further recovery under the contract.

The judgment complained of is affirmed.

*Affirmed.*