**Lawrence BUTLER, Appellant,**

v.

**O/Y FINNLINES, LTD., and Enso-Gutzeit O/Y, Appellees.**

No. 75–1819.

United States Court of Appeals, Fourth Circuit.

Argued March 2, 1976.

Decided June 2, 1976.

Ralph Rabinowitz, Norfolk, Va. (Franklin A. Swartz, Rabinowitz, Rafal & Swartz, Norfolk, Va., on brief), for appellant.

Charles F. Tucker, Norfolk, Va. (John B. King, Jr., Vandeventer, Black, Meredith & Martin, Norfolk, Va., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, and CRAVEN and BUTZNER, Circuit Judges.

CRAVEN, Circuit Judge:

■ Lawrence Butler, a longshoreman, was injured aboard the defendant's vessel SS FINNSAILOR on June 10, 1974. Butler brought suit against the shipowner,[1] alleging that defendant's negligence[2] was responsible for his injuries. The shipowner moved at trial for a directed verdict, which the district court granted. We reverse and remand for trial by jury.

### I.

Since this is an appeal from a directed verdict in favor of the defendant, we must view the evidence in the light most favorable to the plaintiff. Butler is entitled to the benefit of all inferences which the evidence supports, even though contrary infer-

---

1. This is an action brought under § 905(b) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 et seq., as amended.

2. The 1972 amendments to the LHWCA eliminated the longshoremen's unseaworthiness remedy against shipowners, but left them with a cause of action based on allegedly "land-based" principles of negligence. See the legislative history of the 1972 LHWCA amendments at 3 U.S.Code Cong. & Admin.News 4698 (1972).

ences might reasonably be drawn. *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 696, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962); *Mays v. Pioneer Lumber Corp.*, 502 F.2d 106, 108 (4th Cir.), *cert. denied*, 420 U.S. 927, 95 S.Ct. 1125, 43 L.Ed.2d 398 (1975).

On the day of the injury, Butler, a crew foreman with 15 years' experience, was involved in stowing counterweights[3] aboard the SS FINNSAILOR. Butler's stevedore boss had told him that a ship's officer would instruct his crew as to how the counterweights should be loaded. The vessel's third mate was in the hatch supervising and directing the cargo operations. Butler's crew stowed the first counterweight lying flat in the hatch, and ample space remained to stow the second counterweight flat as well. Instead, the ship's mate ordered Butler and his crew to stow the second counterweight between the first one lying flat and some previously-stowed crawler tracks, in a space only 30 inches wide. The only way to place the second counterweight in this narrow space was to raise it upright on its 22-inch side and push it into position using forklift trucks.

Butler protested the order to stow the counterweight in an upright position, suggesting that it be stowed flat like the first, and pointing out that there was plenty of room to stow it flat. The third mate, who was inexperienced in cargo handling and who later admitted it would have been safer to stow the second counterweight flat,[4] nevertheless insisted that it be stowed upright. Morris Hicks, a forklift truck operator experienced in handling heavy cargo, attempted to push the upright counterweight into the narrow space. His forward view was blocked by the counterweight and it became jammed, there being only four inches' clearance to either side. When the counterweight jammed, two feet of it remained sticking out beyond the crawler tracks. The mate then waved Hicks forward, indicating by his hand gesture that he wanted the counterweight pushed hard against the bulkhead. Butler brought up another forklift to the side of the counterweight in an attempt to pry it loose so that it could be moved tight against the bulkhead as the third mate had directed. As the crew attempted to unjam the upright counterweight, it fell over, smashing the forklift against Butler's leg, crushing it so badly that amputation was required.

## II.

At trial Butler's attorney attempted to introduce the testimony of an expert witness, Henry Tiedemann, a graduate of the Massachusetts Institute of Technology with a degree in marine engineering and a certified marine architect who had had first-hand experience in the handling and stowage of counterweights aboard ship. Had he been permitted, Tiedemann would have testified to the custom of the trade in handling and stowing counterweights. He would have said that the defendant's own cargo plan indicated that counterweights should be stowed flat, not upright. Finally, Tiedemann was prepared to express an opinion as an expert that the attempt to stow a 26,500-pound counterweight upright on its 22-inch base in a narrow 30-inch space was neither customary nor safe. The district court, however, refused to permit Tiedemann to testify as to custom of the trade or to state his opinion as to the danger of stowing a counterweight upright. The district judge stated that since evidence of departure or variance from trade custom can never be of itself *conclusive* as to negligence, it has no probative value at all and should be excluded. It is well established that while conduct inconsistent with customary practice does not necessarily prove negligence, it is relevant to the issue of negligence and the establishment of the

---

3. A counterweight is a metal slab placed in the hold of a ship to balance the cargo load and to keep the ship from listing to one side or another. The counterweight which injured Butler was 7' 10" tall, 10' 4" long, and only 22 inches wide; it weighed 26,500 pounds.

4. The Chief Officer of the ship, who had assigned the third mate to supervise cargo loading on the day of the accident, admitted at trial that the "better" practice is to stow counterweights flat.

proper standard of care. Thus it was error to exclude Tiedemann's offered testimony. *See, e. g., Baker v. S/S CRISTOBAL,* 488 F.2d 331 (5th Cir. 1974); *Rich v. Ellerman & Bucknall S.S. Co.,* 278 F.2d 704 (2d Cir. 1960); *Tebbs v. Baker-Whiteley Towing Co.,* 271 F.Supp. 529 (D.Md.), *aff'd,* 407 F.2d 1055 (4th Cir. 1969); *Ramirez v. Toko Kaium K.K.,* 385 F.Supp. 644 (N.D.Cal.1974).

At trial, the ship contended and the district court agreed that the ship's mate was merely instructing the crew where to stow the counterweight, and was not responsible for the manner in which it should be done. Inherent in the mate's choice of *where,* however, was a direction as to *how,* for the mate had chosen a spot so narrow, cramped and confined that he knew that the only way to place the counterweight was to put it in an upright position on its narrow edge.

We believe that plaintiff introduced sufficient evidence, if believed, to justify a jury determination that the defendant was liable in negligence to Butler for damages. Since a jury verdict was forestalled by the action of the trial judge, plaintiff is entitled to a new trial.

*REVERSED.*