**BRUNSWICK BOX COMPANY,
INC., Appellant,**

v.

**COUTINHO, CARO & CO.,
INC., Appellee.**

**No. 78–1141.**

United States Court of Appeals,
Fourth Circuit.

Argued March 8, 1979.

Decided March 17, 1980.

Braden Vandeventer, Jr. and John B. King, Jr., Norfolk (Vandeventer, Black, Meredith & Martin), Norfolk, Va., for appellant.

James A. Howard and E. Leslie Cox, Norfolk, Va. (Breeden, Howard & MacMillan), Norfolk, Va., for appellee.

Before RUSSELL and WIDENER, Circuit Judges, and ROBERT R. MERHIGE, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation.

MERHIGE, District Judge.

Brunswick Box Company, Inc., (hereinafter "Brunswick") has appealed from an order of the district court directing a verdict for defendant-appellee Coutinho, Caro & Co., Inc. (hereinafter "Coutinho") on the bulk of Brunswick's breach of contract claim.[1]

Coutinho, a trading organization incorporated under the laws of the State of New York and involved in international trade, deals in a variety of commodities, including steel, chemicals and paper. In the Fall of 1975, Coutinho prepared a bid to supply stevedoring pallets to the Republic of Venezuela. In the latter part of 1975, representatives of Coutinho met with Lee Miller, a broker employed by Industrial Forest Products Company of Baltimore, Maryland, (hereinafter "Industrial"), seeking his assistance in fulfilling their pallet requirement. Industrial is not a manufacturer of pallets, however, and Mr. Miller subsequently contacted Brunswick, a Virginia corporation with its principal place of business in Lawrenceville, Virginia, to ascertain if Brunswick would manufacture the pallets.

In January 1976, Brunswick's president, Emory Lucy, its secretary/treasurer, Charles Lucy, the Lucys' attorney, a representative of Coutinho, and Lee Miller, met at Industrial's offices in Baltimore, Maryland. Thereafter, the parties prepared a proposed agreement by which Brunswick would supply Coutinho with "95,000 pallets at $9.95/each, F.A.S. Port, Norfolk, Virginia area."

On January 28, 1976, a second meeting was held at the offices of Brunswick. Lee Miller, Emory and Charles Lucy, and the Lucys' attorney were again present. Coutinho vice-president Paul Niebisch, the person responsible for Coutinho's export operations, attended the meeting and brought with him a proposed agreement which had been prepared by Coutinho. Though the parties modified certain sections of the proposed agreement, no substantive change was made in the language "$9.95 per pallet F.A.S. Norfolk, Virginia"; and this language appears in the parties' final written agreement.

The parties' written contract was dated January 27, 1976, and contained provisions requiring the posting of irrevocable letters of credit by both Brunswick and Coutinho. Under the agreement, Brunswick could claim against Coutinho's letter of credit, after the delivery of minimum quantities of 5,000 pallets, by presenting a dock receipt, commercial invoice and certain other documentation. Brunswick was required to, and did establish a letter of credit to Coutinho, in the nature of a performance bond, in an amount equal to 15% of the contract price.

Following a mid-February, 1976 meeting at which the parties finalized their letters of credit, Brunswick commenced manufacturing the pallets. As of that time, however, Coutinho had not determined where in the Norfolk area Brunswick was to deliver the pallets, although the Lucys testified that at each of the meetings it was agreed that Brunswick's obligations would cease

---

[1] Plaintiff in its complaint sought $52,237.50 in damages from defendant Coutinho. Coutinho admitted liability as to certain of Brunswick's allegations, and the district court entered judg- ment for Brunswick for $1,296.10. This appeal is solely from the court's order directing a verdict for defendant Coutinho on the remainder of Brunswick's claim.

once the pallets reached the port. In early 1976, Coutinho's agents, Jack Wollman and Bernard Leyden, contracted with Lambert's Point Docks, Inc., Norfolk, Virginia, for the unloading of pallets from Brunswick's trucks, and for the storage and subsequent loading of those pallets onto vessels, at a cost of $5.50 per net ton. Lambert's Point Docks' agents had no discussion with Brunswick concerning these charges; Lambert's Point's dealings were solely with agents of Coutinho.

After Brunswick, pursuant to Coutinho's direction, delivered its first loads of pallets to Lambert's Point terminal, Brunswick president, Emory Lucy, received a bill from Lambert's Point for transfer and unloading charges [which had been sent to Coutinho, and upon its instruction, redirected to Brunswick]. Lucy, however, contacted E. N. Kelley at Lambert's Point and advised him that the charges were for Coutinho's and not Brunswick's account. Kelley then forwarded the unloading and transfer bill to Coutinho. Coutinho paid the bill, but emphasizes that had it not done so the pallets would not have been placed on board the ship which was then at the berth waiting to be loaded.

Thereafter, Coutinho paid all the Lambert's Point tariff charges for unloading, storage, and transferring the pallets delivered by Brunswick.

Shortly before the expiration date of Brunswick's letter of credit, and after Brunswick had delivered all pallets called for under the contract, Coutinho made a claim upon the Brunswick letter of credit for $52,237.50, which Brunswick had refused to pay, for the tariff, unloading and transfer charges. The bank paid Coutinho the full $52,237.50, based upon Coutinho's sworn statement that Brunswick had not complied with the terms of the parties' contract and had not paid the Lambert's Point unloading and transfer charges.

Brunswick thereafter filed its breach of contract action, alleging that "it was specifically agreed by the parties that all handling charges, demurrage, etc., including the cost of unloading the pallets at the place of delivery, were not the responsibility of plaintiff, but rather were to be paid by defendant." Plaintiff asserted that, by making a claim and receiving payment of $52,237.50 against the letter of credit for reimbursement of the unloading and transfer payments, Coutinho had breached the parties' agreement.

At the conclusion of the plaintiff's evidence, upon motion of the defendant, the trial court directed a verdict for defendant Coutinho, concluding that the January 27, 1976 contract represented the parties' final agreement; that the contract required plaintiff Brunswick to ship the pallets "F.A.S. Norfolk, Virginia", and that the meaning of the term "F.A.S.", in light of the custom in the port of Norfolk, clearly required Brunswick to pay the pallet unloading charges. The trial court held that the evidence at trial which plaintiff Brunswick had introduced, as to what the parties intended by the use of the term "F.A.S. Norfolk", only served to contradict the clear meaning of the written wording of the contract, and was therefore inadmissible under the Parol Evidence Rule, Va.Code § 8.2–202.[2]

In its appeal from the judgment of the district court, Brunswick asserts that there are dual reasons why the district judge erred in directing a verdict for defendant Coutinho. First, Brunswick contends that the contract term "F.A.S. Norfolk" is am-

---

2. § 8.2–202. Final written expression; parol or extrinsic evidence.—Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

(a) by course of dealing or usage of trade (§ 8.1–205) or by course of performance (§ 8.2–208); and

(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement. (1964, c. 219.)

biguous, and hence the Parol Evidence Rule, Va.Code § 8.2–202 does not bar jury consideration of parol evidence in determining the meaning of that term. Second, and in our view a more viable position, Brunswick contends that even if the term "F.A.S. Norfolk" is clear and unambiguous on the face of the contract, the disputed evidence at the trial regarding the parties' course of performance created a factual issue as to the meaning which the parties ascribed to that term. We are of the view that Brunswick's position in this regard is well taken and that the trial court erred in holding that there were no jury issues.

This is a diversity action brought in Virginia upon a contract signed and executed in Virginia; the parties recognize that Virginia choice-of-law dictates that the law of Virginia must be applied. *Erie Railroad Co. .v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1937); Va.Code § 8.1–105(1).

The central and controlling concern of the parties in this case is whether the buyer, Coutinho, or the seller, Brunswick, must, pursuant to the contract, pay the fee assessed by Lambert's Point Docks for unloading the stevedore pallets from Brunswick's trucks and placing the pallets into. open storage. The Uniform Commercial Code, (hereinafter referred to as the "Code") as enacted in Virginia, controls the Court's interpretation of the contract for the sale of goods. *See* Va.Code §§ 8.2–102 and 8.2–105(1).

The parties' contract, dated January 28, 1976, contains the following provision: "Price: $9.95 per pallet F.A.S. Norfolk, Virginia." Va.Code § 8.2–319(2) defines "F.A. S." as follows:

(2) *Unless otherwise agreed* the term F.A.S. vessel (which means "free alongside") at a named port, even though used only in connection with the stated price, is a delivery term under which the *seller must*

(a) *at his own expense* and risk *deliver the goods* along side the vessel *in the manner usual in that port or on a dock*

*designated and provided by the buyer . . . . .* (emphasis added).

It is apparent from the trial court's bench opinion that it deemed the term "F.A.S." to be unambiguous, and while acknowledging that Code § 8.2–319(2) permits the parties to otherwise agree as to the meaning of the term, it limited proof in that regard to "usage of the port." The trial court stated:

Now it is clear, when you apply the test of usage to explain the terms of the contract as testified to here as being prevalent in the port of Norfolk—that is, in this area where this contract was to be performed—which § 202 specifically permits, f.a.s. means that the shipper pays the cost of unloading. That is uncontradicted.

The Court then went on to say:

If you refer to § 319 of the Uniform Commercial Code, you will also find language which is applicable, and there the section says, unless otherwise agreed, f.a.s. vessel, which means free alongside of any port, even though used only in connection with a stated price, is the delivery term under which the seller must, at his own expense and risk, deliver the goods alongside the vessel in the manner usual in that port or on a dock designated and provided by the buyer.

The Court has stated already and found already that it is uncontradicted that "the manner usual at that port" is that the cargo or the freight be unloaded from the conveyance bringing it to the dock area.

Admittedly, the undisputed testimony at trial that "the manner usual in that port," that is, in the port of Norfolk, was for the cargo or the freight to be unloaded from the conveyance, bringing it to rest on the dock area, rather than to rest on the pier at the ship's berth. Indeed, Brunswick, in this appeal, does not dispute that this is, in fact, the practice of the port. The parties therefore recognize that if the statutory definition of "F.A.S. Norfolk, Virginia" is applied, Brunswick is liable for the pallet unloading charges, for under the statutory definition, in light of the trade usage at the

port, Brunswick, the seller, would be required, at its own expense, to deliver the stevedoring pallets to the marine terminal and pay the tariff charges to unload the pallets from the delivery trucks to a point of rest in open storage within the terminal.

It is true, as Coutinho argues, that a number of Virginia cases have held that extrinsic evidence may not be received to explain or supplement a written contract unless the Court finds the writing as ambiguous. *See Mathieson Alkali Works v. Virginia Banner Coal Corp.*, 147 Va. 125, 136 S.E. 673 (1927). This Court has, however, stated in *Columbia Nitrogen Corp. v. Royster Co.*, 451 F.2d 3, 8 (4th Cir. 1971),

> This rule, however, has been changed by the Uniform Commercial Code which Virginia has adopted. The Code expressly states that it "shall be liberally construed and applied to promote its underlying purposes and policies," which include "the continued expansion of commercial practices through custom, usage and agreement of the parties . . . ." Va.Code Ann. § 8.1–102 (1965). The importance of usage of trade and course of dealing between the parties is shown by § 8.2–202 which authorizes their use to explain or supplement a contract. The official comment states this section rejects the old rule that evidence of course of dealing or usage of trade can be introduced only when the contract is ambiguous. And the Virginia commentators, noting that "[t]his section reflects a more liberal approach to the introduction of parol evidence . . . than has been followed in Virginia," express the opinion that *Mathieson, supra*, and similar Virginia cases no longer should be followed. Va.Code Ann. § 8.2–202, Va. Comment. *See also Portsmouth Gas Co. v. Shebar*, 209 Va. 250, 253 n. 1, 163 S.E.2d 205, 208 n. 1 (1968) (dictum). We hold, therefore, that a finding of *ambiguity is not necessary* for the admission of extrinsic evidence about the usage of the trade and the *parties' course of dealing*. (Emphasis added.)

The record reflects that the trial court, in its ruling on the motion for a directed verdict, rejected evidence as to the dealings between the parties both leading up to the execution of the contract, and subsequent thereto.

Brunswick points specifically to the conflicting testimony of the witnesses as to what was intended by the parties in the use of the term "F.A.S." in the instant contract. Brunswick points to conversations and conduct between the parties, which, it contends, created a factual dispute as to whether the parties had "otherwise agreed" to the contractual meaning of "F.A.S."

We agree that on the face of the contract the term "F.A.S. Norfolk, Virginia" is not in and of itself ambiguous. As we have heretofore pointed out, that conclusion does not, however, preclude the admission of extrinsic evidence, not only about the usage of the trade, but the parties' course of dealing as well.

■ Since this is an appeal from a directed verdict in favor of the defendant, we must view the evidence in the light most favorable to the plaintiff. Brunswick is entitled to the benefit of all inferences which the evidence supports, even though contrary inferences might reasonably be drawn. *See Butler v. O/Y Finnlines, Ltd.*, 537 F.2d 1205, 1206 (4th Cir. 1976); *Mays v. Pioneer Lumber Corp.*, 502 F.2d 106 (4th Cir. 1974).

■ Coutinho's position is that Brunswick's evidence was properly excluded because it was inconsistent with the express terms of their agreement. There can be no argument but that the Uniform Commercial Code restates the well established rule that evidence of usage of trade and the course of dealings should be excluded whenever it cannot be reasonably construed as consistent with the terms of the contract. *See Columbia Nitrogen Corp. v. Royster Co., supra*, 451 F.2d 3, 9 (4th Cir. 1971). Nevertheless, we are of the view that simply because a contract appears on its face to be complete, § 8.2–202 of the Code precludes any such broad exclusionary rule.

That section expressly permits evidence of course of dealing or usage of trade to explain or supplement terms intended by the parties as a final expression of their agreement. As Judge Butzner, speaking for the court, stated: "When this section is read in light of Virginia Code Ann. § 8.1–205(4),[3] it is clear that the test of admissibility is not whether the contract appears on its face to be complete in every detail, but whether the proferred evidence of course of dealing and trade usage reasonably can be construed as consistent with the express terms of the agreement." *Columbia Nitrogen Corp., supra* at 9.

In the instant case, the record reflects that the conduct and discussions of the parties show that each had a different understanding of the meaning of the contested term. Their discussions prior to the agreement, coupled with their conduct both prior to and in attempting to fulfill their respective obligations under the contract would indicate that each viewed the term "F.A.S. Norfolk, Virginia" in a manner different than the statutory definition.

[3] Indeed, the record reflects that the vice-president of Coutinho did not consider the term "F.A.S. Norfolk" to require delivery of the pallets alongside the vessel, as the term "F.A.S." is defined in Code § 8.2–319, but instead, he understood it to mean delivery by Brunswick to a terminal facility for storage. In our view, it was for the jury to say whether the contract constituted a complete statement of the bargain between the parties. While it is elementary that parol evidence is not admissible to explain or undertake to qualify a written agreement when it constitutes a complete statement of the bargain, it is equally as elementary that the rule does not apply when the writing on its face does not embody the entire agreement. In such a case, parol evidence is always admissible, not to

contradict or vary the terms, but to establish the real contract between the parties. *See Shockey v. Westcott*, 189 Va. 381, 53 S.E.2d 17 (1949). *See also Rock-Ola Manufacturing Corp. v. Wertz*, 282 F.2d 208, 210 (4th Cir. 1960). In its simplest form, Coutinho's contention is that if the parties had intended a meaning different than the statutory definition of the term in issue, it would have had to have been embodied in the language of the contract. We disagree.

Virginia Code § 8.1–201(3) defines "agreement" as "a bargain of the parties as found in their language *or, by implication from other circumstances including course of dealing* or usage of trade *in course of performance . . .*" (emphasis added). Additionally, our conclusion that the parties may go outside the written document in determining whether the parties "otherwise agreed" as to what they, in fact, agreed upon, is buttressed by additional references in the Code to "course of performance, accepted or acquiesed in without objection" as being relevant in determining the meaning of the agreement as provided for in § 8.2–208.

As the official comment to § 8.2–208 states,

The parties themselves know best what they have meant by their words of agreement and their action under that agreement is the best indication of what the agreement was. This section thus rounds out the set of factors which determines the meaning of the "agreement" and therefore also of the "unless otherwise agreed" qualification to various provisions of this article.

In summary, we are satisfied that the Parol Evidence Rule, Virginia Code Ann. § 8.2–202, is not a bar to the introduction of extrinsic evidence as to the intention of the parties in the use of the term "F.A.S. Norfolk, Virginia" in the written agree-

---

**3.** § 8.1–205. Course of dealing and usage of trade.—

\*   \*   \*   \*   ·   \*   \*

(4) The express terms of an agreement and an applicable course of dealing or usage of trade shall be construed wherever reasonable as consistent with each other; but when such construction is unreasonable express terms control both course of dealing and usage of trade and course of dealing controls usage of trade.

ment. An examination of the record satisfies us that the parties differed sharply as to the meaning and intent in utilizing the term "$9.95 per pallet F.A.S. Norfolk." Extrinsic evidence is then admissible, not for purposes of contradicting the written agreement, but for purposes of ascertaining the parties' intentions in using the term in controversy. While the term itself, on its face, is unambiguous, the fact that the parties met in Baltimore in January of 1976, wherein at the time a proposal was prepared to the effect that Brunswick would supply the pallets at the price of $9.95 per pallet, and at which time discussions were had between the parties as to when Brunswick's obligations ceased insofar as delivery of the pallets were concerned, and the further fact that the evidence indicates that no unloading, storage, or handling costs were included in the price quoted, coupled with evidence that a representative of Coutinho allegedly acquiesced with Brunswick's understanding that any and all charges concerning the handling of the pallets, and the unloading of them after Brunswick's trucks arrived at the pier, to be Coutinho's account, as well as the fact that there was evidence to the effect that Countinho's representative acquiesced in the understanding that Brunswick's responsibility was to cease when its trucks arrived at the pier with the pallets, are all matters upon which the jury might conclude that the parties had indeed "otherwise agreed".

JUDGMENT VACATED AND REMANDED.

WIDENER, Circuit Judge, concurring:

While I concur in the opinion of the court, I do not think it necessary to rely upon *Columbia Nitrogen*, and thus would add a word.

I emphasize that the course of dealing between these two parties is consistent with Brunswick's claim that it had "otherwise agreed" under Va. Code § 8.2–319(2) to a variation of the meaning of "FAS Norfolk". Therefore, the evidence should have been admitted, for it "explained" "such terms as are included" in the "written expression" of the parties and as such was admissible under Va. Code § 8.2–202 (the parol evidence rule).

All the law applicable to this case seems apparent to me from the literal terms of the Virginia Code, except the Code is silent on whether or not parties who have "otherwise agreed" under § 8.2–319(2) must have done so in the same "writing" that is their "written expression" under Va. Code § 8.2–202. There is nothing offered to show that such an agreement need be in that writing, so I agree with the panel holding that it need not be.