**Frank HARRIS, Plaintiff,**

v.

**S.P. SHIPPING CO., LTD., and Torm Lines, Defendants.**

**Civ. A. No. 2:92cv784.**

United States District Court, E.D. Virginia, Norfolk Division.

March 17, 1993.

---

**3.** The accident occurred on January 1, 1991. This action was filed on December 31, 1992.

Zaleski, Weisberg and Stern, Norfolk, VA, for plaintiff.

D. Arthur Kelsey, Hunton and Williams, P.C., Norfolk, VA, for defendant Torm Lines.

Charles F. Tucker, Vandventer, Black, Meredith and Martin, P.C., Norfolk, VA, for defendant S.P. Shipping Co., Ltd.

## OPINION AND ORDER

MacKENZIE, Senior District Judge.

This case is before the Court on defendant Torm Lines' motion for summary judgment. For the reasons stated below, Torm Lines' motion is GRANTED.

## I. STATEMENT OF THE RELEVANT FACTS

This case arises from an accident that occurred aboard the vessel M/V JURAJ DAL-MATINAC ("the ship") as plaintiff Frank Harris ("Harris"), a longshoreman, was unloading the ship in Norfolk. Defendant S.P. Shipping Co., Ltd. ("S.P.") owns the ship. At the time of the accident defendant Torm Lines was the ship's time charterer for a two year period pursuant to a form time charter used world-wide and approved by the New York Produce Exchange. The time charter contained two clauses relevant to this action. First, Clause Eight of the time charter provided as follows: "Charterers are to load, stow [sic] the cargo at their expense under the supervision of the Captain and responsibility [sic]." Poulsen Aff., Exhibit A at ¶ 8. The other relevant part of the contract was Clause Twenty-six:

> Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the navigation of the vessel, act [sic] of pilots and tugboats, insurance, crew, and all other matters, same as when trading for their own account.

*Id.* at ¶ 26. The contract also provided that the shipowner was responsible for the crew's wages and provisions and the ship's maintenance. *Id.* at ¶¶ 1, 22.

At the time of the accident Torm Lines had no employees or agents aboard the ship, nor did it have any representatives in Nor-

Ralph Rabinowitz, Rabinowitz, Rafal, Swartz, Taliaferro and Gilbert, P.C., Allan D.

folk directing the unloading. Poulsen Aff. at ¶ 6. The ship's captain and crew were employees of the shipowner, S.P.. S.P.'s Answers to Interrogs. at ¶ 1. Although there is a factual dispute regarding Torm's directions to S.P. about use of the crew in unloading the ship, the Court will explain why that dispute does not raise an issue of material fact for trial.

On November 14, 1990, Harris was unloading the ship in Norfolk, Virginia. The ship's crew had attempted to disengage twistlocks on certain containers before the longshoremen came aboard to begin unloading the ship. The group of longshoremen that included Harris came aboard and began moving cargo. As the group was working, one longshoreman moved an empty container from the Number Three hatch cover to the Number Four hatch cover using a crane. The container being moved snagged on the container below it because it was still attached by a twistlock at the front left corner. The crane operator continued to lift the container despite the fact that it was snagged. Harris, who was standing on top of an adjacent stack of containers, then allegedly lost his balance and either jumped or was knocked onto the deck, resulting in neck, shoulder, and back injuries. *See* Pl's. Answers to S.P.'s Interrogs. at ¶¶ 19, 21, 23; Pl's. Answers to Torm Lines' Interrogs. at ¶¶ 1(b), 3(a). Harris brought this action under the Longshoremen's and Harbor Worker's Compensation Act ("LHWCA"), 33 U.S.C. § 905(b). Torm Lines now moves for summary judgment, contending that it has no liability for Harris' injuries as a matter of law because of its status as a time charterer.

## II. DISCUSSION

### A. *STANDARD OF REVIEW*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). To prevail, the moving party need only show that the non-moving party has failed to "set forth specific facts showing that there is a genuine

issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### B. *TORM LINES' LIABILITY UNDER THE TIME CHARTER*

The settled law in the Eastern District of Virginia is that a time charterer under the standard form charter at issue here is not liable for injuries incurred by persons involved in unloading the ship. *Shaw v. South African Marine Corp.,* 1983 A.M.C. 1578, 1580–81 (E.D.Va.1982); *Wyche v. Oldendorff,* 284 F.Supp. 575, 576–77 (E.D.Va.1967); *Saridis v. S.S. Paramarina,* 216 F.Supp. 794, 797 (E.D.Va.1962). Furthermore, although the Fourth Circuit has not addressed this issue in any exhaustive opinion, it has rejected the theory that the time charter entitles an injured longshoreman to recovery as a third party beneficiary. *See Bernard v. U.S. Lines, Inc.,* 475 F.2d 1134, 1135–36 (4th Cir.1973) (per curiam) (noting that "charter party created no contractual duty to the longshoreman on the part of the United States as time charterer"). Other jurisdictions have also agreed that this particular time charter does not act as a basis for the time charterer's liability to injured longshoremen. *See, e.g., Mallard v. Aluminum Co. of Canada, Ltd.,* 634 F.2d 236, 242 n. 5 (5th Cir.), *cert. denied,* 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981); *Dougherty v. Navigazione San Paolo, S.P.A. Medafrica Line,* 622 F.Supp. 1, 3–4 (E.D.Pa. 1984). The reason most courts have held that a time charterer generally has no such liability is that a time charterer only rents space on a vessel; it exercises no control over vessel and makes no decisions about daily operation.

Admittedly, authority exists for the proposition that Clause Eight imposes liability on the time charterer for injuries to persons unloading a ship. *See Turner v. Japan Lines, Ltd.,* 651 F.2d 1300, 1306 (9th Cir. 1981) (holding that Clause Eight imposes liability on time charterer for injuries to longshoremen), *cert. denied,* 459 U.S. 967, 103 S.Ct. 294, 74 L.Ed.2d 278 (1982) *and*

*mandate amended on different grounds,* 702 F.2d 752 (9th Cir.1983); *Fernandez v. Chios Shipping Co., Ltd.,* 542 F.2d 145, 151 (2d Cir.1976) (holding that Clause Eight requires time charterer to indemnify shipowner for any damages awarded because of injury to longshoreman). However, the Court finds that that authority is unpersuasive and in conflict with the Fourth Circuit's decision in *Bernard,* 475 F.2d at 1135–36. Common sense dictates that the time charterer should be liable only for those injuries caused either by its direct negligence or for which it specifically agreed to bear responsibility. Any other conclusion would defeat the purpose of including Clauses Eight and Twenty-six in the time charter.

■ The Court's conclusion is reinforced by the fact that Clause Eight as worded here offers the time charterer even more protection than in the cases cited above. In all of those cases, Clause Eight stated only that unloading would be conducted "under the supervision of the Captain." The parties here edited Clause Eight to state that unloading would be conducted "under the supervision of the Captain *and responsibility.*" Poulsen Aff., Exhibit A at ¶ 8 (emphasis added). If there was any question about the allocation of liability before the parties edited Clause Eight, the addition of that phrase ended all possible doubt as to Torm Lines' liability under the time charter for accidents involving longshoremen. Other courts interpreting this time charter have held that Clause Eight as edited precludes the time charter from acting as a basis of the charterer's liability for injuries to longshoremen. *See generally Alexandros Shipping Co. of Piraeus v. MSC Mediterranean Shipping Co., S.A. of Geneva,* 1 Lloyd's Rep. 421 (Q.B. 1986); *Marintrans (A.B.) v. Comet Shipping Co., Ltd.,* 1 Lloyd's Rep. 568 (Q.B:1985); *MSC Shipping Co. S.A. v. Alianca Bay Shipping Co., Ltd.,* 2 Lloyd's Rep. 216 (Q.B.1985). Even in its original form this time charter would not have been a basis for liability, and it clearly precludes liability as edited. Thus, Harris cannot rely on the time charter to hold Torm Lines liable for his injuries.

## C. *TORM LINES' LIABILITY INDEPENDENT OF THE TIME CHARTER*

■ Seeing that law of this District and the Fourth Circuit place him at a disadvantage regarding the time charterer's liability, Harris submits that Torm Lines is responsible for his injuries because it breached a duty to him independent of the time charter. In doing so, he relies on a novel theory derived from *Scindia Steam Nav. Co., Ltd. v. de los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981) and *Butler v. O/Y Finnlines, Ltd.,* 537 F.2d 1205 (4th Cir.1976). In *Scindia* the Supreme Court noted that custom could provide the basis for a shipowner's liability to an injured stevedore, 451 U.S. at 172, 101 S.Ct. at 1624, and *Butler* addresses the sufficiency of evidence of negligence in a case under 33 U.S.C. § 905(b). In *Butler* the plaintiff was injured while storing a heavy counterweight. The ship's mate had directed that the plaintiff store the counterweight in a particular space, which required that the counterweight be stored in an upright position. *Id.* at 1207. The plaintiff protested that the upright position was unstable and testimony at trial established that it would have been safer to store the counterweight flat but the ship's mate insisted that the plaintiff use the upright position. *Id.* The counterweight fell on the plaintiff's leg as it was being placed. The trial court granted a directed verdict for the defendant, finding that the ship's mate was only instructing the plaintiff where to stow the counterweight, rather than telling the plaintiff how to stow it. *Id.* at 1208. The Fourth Circuit reversed, noting that

[i]nherent in the mate's choice of *where,* however, was a direction as to *how,* for the mate had chosen a spot so narrow, cramped and confined that he knew that the only way to place the counterweight was to put it in an upright position on its narrow edge.

*Id.* (emphasis in original).

■ Harris submits that the custom in the shipping industry is for the charterer to utilize parties of longshoremen to unload ships, Little Aff. at ¶ 2, and that Torm Lines failed to comply with this custom by directing that

the ship's crew make as many of the unloading preparations as possible prior to the boat's docking in order to avoid having the longshoremen perform the same tasks at an hourly wage. According to Harris, only one crew member disengaged the twistlocks, and if the longshoremen had performed the disengagement, a crew of six would have performed that task. Under Harris' theory of liability, Torm Lines' directions create a jury question regarding negligence because the group of longshoremen would have performed the disengagement of the containers in a safer manner than a lone crew member. Harris uses *Butler* to assert that Torm Lines' choice of *who* was to unload the ship determined *how* the ship was unloaded, and that Torm Lines knew or should have known that the supposedly undermanned crew would hurriedly perform the task of disengaging the twist locks in a shoddy manner, thereby creating the situation that caused his injuries.

Harris' reliance on *Scindia* and *Butler* is misplaced, as those cases deal only with the *shipowner's* liability. Further, the fact that Torm Lines directed the shipowner to use the crew to accomplish as much of the unloading as possible prior to the ship's docking does not establish that Torm Lines had enough control over the operation of the vessel to justify the imposition of liability here. Moreover, even if the evidence was sufficient to establish control, it does not suffice to raise an inference of negligence. In *Butler* the danger of the conduct in question was patently obvious to all parties involved; here, by contrast, Torm Lines could not possibly have foreseen that there was any danger in directing the crew to perform as much of the unloading as possible prior to docking. Thus, *Butler* does not lead to the conclusion here that *who* unloads the ship dictates the safety of the unloading. The factual dispute over the extent of Torm Lines' directions to S.P. about who was to unload the ship is legally irrelevant and Harris cannot use that dispute to survive a motion for summary judgment. *See Guinness PLC v. Ward,* 955 F.2d 875, 883 (4th Cir. 1992). It also is pure speculation to suggest that but for Torm Lines' directions to S.P., Harris' injuries would not have occurred.

For the purposes of a summary judgment motion, "wholly speculative assertions will not suffice" to create a *genuine* issue of fact. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985). This evidence fails to create a genuine or material question of fact regarding Torm Lines' liability to Harris outside of the time charter.

### III. CONCLUSION

The time charter does not impose liability on Torm Lines for Harris' injuries. Furthermore, Harris has failed to raise any genuine or material issue of fact as to whether Torm Lines caused his injuries by breach of some duty independent of the time charter. Accordingly, Torm Lines' motion for summary judgment is GRANTED and it is DISMISSED as a defendant to this action.

It is so ORDERED.