**Darrell JONES, Plaintiff,**

v.

**NAVIX LINE, LTD., Nippon Yusen Kaisha (NYK Line), Sunford Shipping, Ltd., Nippo Marine Co., Ltd., Cetragpa, Nisshin Shipping Co., Ltd., and Mitsubishi Shipping, Ltd., Defendants.**

No. 2:95cv1193.

United States District Court,
E.D. Virginia,
Norfolk Division.

Nov. 4, 1996.

Alan P. Owens, Norfolk, VA, Daniel P. Hartstein, Philadelphia, PA, for plaintiff.

D. Arthur Kelsey, Hunton and Williams, Norfolk, VA, for Defendants Nippon Yushen Kaisha ("NYK Line") and Cetragpa.

*OPINION AND ORDER*

MacKENZIE, Senior District Judge.

## I.

The plaintiff, Darrell Jones, is suing under the Longshoremen and Harbor Workers' Compensation Act ("LHWCA") for injuries he received in 1991 as a longshoreman during undocking operations on the *M/V Concorde Maru*. The plaintiff alleges that the accident was caused by the crew's negligent pulling of a mooring line when it should have been slackened. The plaintiff collected compensation benefits from his employer, and in the instant suit he seeks recovery against various nonemployer defendants. Under 33 U.S.C.A. § 905(b) (1986), an injured longshoreman can bring an action for injuries caused by the negligence of a vessel against parties who had ownership interests in the vessel or control over the vessel.

Plaintiff originally filed this suit in 1993 in the Eastern District of Pennsylvania, and due to difficulties in serving some of the foreign defendants the case was placed in civil suspension. On November 3, 1995, after the case had been removed from suspension, the case was transferred to the Eastern District of Virginia. Claims against two defendants, Sunford Shipping and Navix Line, were dismissed by consent order on March 8, 1996. This matter is currently before the Court on the summary judgment motion of two other defendants, Nippon Yusen Kaisha ("NYK Line") and Cetragpa. Because the plaintiff has failed to proffer any evidence that these defendants owed him a duty of care, summary judgment is granted in favor of both defendants.

## II.

Defendant NYK Line is entitled to summary judgment because there is no evidence whatsoever that this defendant had any connection to the *M/V Concorde Maru* or to plaintiff's accident. NYK Line has consistently denied any involvement. Specifically, in support of this summary judgment motion, Takao Tanabe, manager of the Maritime Law Team of Nippon Yusen Kaisha, swore in a declaration that NYK Line did not

own, operate, manage, possess, or control the *M/V Concorde Maru*. He further swore that NYK Line was not a successor in interest to any owner or charterer of the vessel and that it was not a corporate parent or subsidiary of any owner or charterer; he attested to the fact that NYK Line never hired or controlled any crewmember or officer engaged in any docking or undocking maneuvers. While the case was still before the Eastern District of Pennsylvania, Yuji Twakiri, manager of NYK Line swore to a similar affidavit in support of NYK's motion to dismiss or for summary judgment before that court. In October, NYK Line responded to plaintiff's interrogatories and continued to deny any interest in the vessel or involvement in plaintiff's accident.

The plaintiff now admits that it has never been unable to substantiate the allegations concerning NYK Line's ownership interest. The plaintiff initially named NYK Line as a defendant because Lloyd's Confidential Index indicated that the ship was owned by St. Vincent Shipping, purportedly a subsidiary of NYK Line. However, this document has not been authenticated and its contents are unverified hearsay. Therefore, the document cannot constitute admissible evidence, and it cannot assist the plaintiff in avoiding summary judgment. Fed.R.Civ.P. 56(e); *see also Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir.1993), *cert. den.*, —— U.S. ——, 114 S.Ct. 1835, 128 L.Ed.2d 463 (1994). Accordingly, the parties agree that NYK Line has no liability for the plaintiff's injuries, and summary judgment is **GRANTED** as to the claims against NYK Line.

### III.

■ Cetragpa, the time charterer of the vessel at the time of the accident, is also entitled to summary judgment. The settled law of the Eastern District of Virginia is that time charterers, such as Cetragpa, are normally not liable for the negligence of a vessel's crew. *Harris v. S.P. Shipping Co., Ltd.*, 818 F.Supp. 149 (E.D.Va.1993); *Shaw v. South African Marine Corp.*, 1983 A.M.C. 1578 (E.D.Va.1982); *Wyche v. Oldendorff*, 284 F.Supp. 575 (E.D.Va.1967); *Saridis v. S.S. Paramarina*, 216 F.Supp. 794 (E.D.Va.

1962). Unlike demise or bareboat charters, a time charter is an arrangement by which the charterer acquires the vessel's carrying capacity and makes business decisions about how it will be utilized, but under which the vessel's owner remains fully responsible for the operation of the ship. *See Saridis v. S.S. Paramarina*, 216 F.Supp. 794, 797 (E.D.Va. 1962). Therefore, "[c]ommon sense dictates that the time charterer should be liable only for those injuries caused either by its direct negligence or for which it specifically agreed to bear responsibility." *Harris*, 818 F.Supp. at 152.

Here, the parties entered into a charter agreement that used the standard New York Produce Exchange Charter (the "NYPE" form). This charter agreement, as slightly modified by the contracting parties, provides in Clause 8 that

> [t]he Captain (although appointed by the Owners), shall be under the orders and directions of the Charters as regards employment and agency; and Charterers are to load, stow, trim, and discharge the cargo at their expense under the responsibility with respect to seaworthiness of the vessel and supervision of the Captain.

This wording has been repeatedly interpreted by this Court to place financial responsibility of loading and unloading cargo on the time charterer, while leaving responsibility for the crew's actions with the owner of the vessel. *Harris*, 818 F.Supp. at 151; *Shaw*, 1983 A.M.C. at 1581; *Wyche*, 284 F.Supp. at 576–77. Clause 26 states,

> Nothing herein stated is to be construed as a demise of the vessel to the Time Charters. The owners to remain responsible for the navigation of the vessel, acts of pilots and tugboats, insurance, crew, and all other matters, same as when trading of their own account.

As we observed in *Harris*, to hold a time charterer responsible for the negligence of the chartered vessel's crew "would defeat the purpose of including Clauses Eight and Twenty-six in the time charter." *Harris*, 818 F.Supp. at 152.

■ There are exceptions to the general rule of non-liability for time charters; they

may be found liable if the cause of harm was within the charterer's "traditional sphere of control and responsibility" or if the language of the charter agreement clearly indicates that the parties to the charter intended the charterer to be responsible for the operations of the ship and its crew. *Moore v. Phillips Petroleum Co.*, 912 F.2d 789, 791 (5th Cir. 1990); *see also Harris*, 818 F.Supp. at 152.

■ However, nothing in the record before the Court indicates that any such circumstances are present. Although the plaintiff insists that he is suing Cetragpa for its own acts, he has not pointed to a single act by Cetragpa which could be construed as negligent. In an effort to avoid summary judgment, the plaintiff filed a motion to continue the matter for a forty-five day period of discovery on the matters pertinent to the defendants' motion for summary judgment. Although he asks for more time to discover facts demonstrating Cetragpa's control over the operation of the vessel, the plaintiff's brief in support of its motion does not indicate any reason whatsoever why he has been unable to develop sufficient evidence against Cetragpa in the three years since this suit was filed. Therefore, the Court **DENIES** the plaintiff's motion for an extension of time.

■ Under the clear dictates of this Court's precedents, Cetragpa is not responsible for injuries to a longshoreman caused by the negligence of the crew of the *M/V Concorde Maru* and therefore it is entitled to summary judgment. By demonstrating to the Court that Cetragpa was the time charterer of the M/V Concorde Maru, Cetragpa has met its burden of demonstrating the absence of a material factual dispute with respect to an element of the plaintiff's case, namely that Cetragpa owed plaintiff some duty of care. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In addition to demonstrating that their time charter arrangement was a standard one, Cetragpa filed affidavits affirmatively denying that it exercised any control over the crew's operations. As the non-moving party with the ultimate burden of proof, the plaintiff must then come forward with evidence that creates an issue of material fact on this element of his case.

*Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. This the plaintiff has failed to do.

The plaintiff does not dispute the applicability of our precedents to his suit. However, he notes that the interpretation of clause 8 of the NYPE form charter agreement and liability of a time charterer under the LHWCA is the subject of a circuit split. *Compare Kerr–McGee Corp. v. Ma–Ju Marine Services, Inc.*, 830 F.2d 1332, 1340 (5th Cir.1987) (collecting cases holding that time charterers are generally not liable for the negligence of vessel's crew) *with Turner v. Japan Lines, Ltd.*, 651 F.2d 1300, 1306 (9th Cir.1981), *cert. denied*, 459 U.S. 967, 103 S.Ct. 294, 74 L.Ed.2d 278 (1982) (holding that clause 8 of the NYPE charter party expressly makes the time charterer liable for the vessel's negligence); *see also Fernandez v. Chios Shipping Co., Ltd.*, 542 F.2d 145, 151 (2d Cir.1976) (same). Because the Fourth Circuit has never directly addressed this issue, the plaintiff wishes to preserve his objections to the dismissal of Cetragpa for a possible appeal. This Court repeats the conclusion of *Harris* that *Turner* and *Fernandez* are unpersuasive and in conflict with the Fourth Circuit's decision in *Bernard v. U.S. Lines, Inc.*, 475 F.2d 1134, 1135–36 (4th Cir. 1973) (holding that a charter party creates no contractual duty towards a longshoreman on the part of a time charterer).

**IV.**

■ In addition, the Court finds that independent grounds exist for granting a dismissal of the claims against Cetragpa. At oral argument, Cetragpa renewed arguments made before the Eastern District of Pennsylvania. At that time, Cetragpa moved for dismissal under Fed.R.Civ.P. 12(b)(2) and 12(b)(5) for failure of the plaintiff to properly serve Cetragpa with a copy of the complaint and summons. Because he was ordering a transfer of the case for improper venue, Judge Robert Kelly of the Eastern District of Pennsylvania dismissed as moot all pending motions for summary judgment or dismissal.

The plaintiff served Cetragpa under former Federal Rule of Civil Procedure

4(c)(2)(C)(ii), which authorizes a plaintiff to send a copy of the complaint and summons, along with a form acknowledging receipt of the complaint and waiving formal service. Under that rule, if the acknowledgment form is not signed and returned, the plaintiff must personally serve the defendant. The complaint, summons, and acknowledgment form were hand-delivered by plaintiff's messenger. The acknowledgment form states that service is being made pursuant to Rule 4(c)(2)(C)(ii), and explains that under that rule the person accepting service may either not return the form, and bear the costs of personal service, or may return the form and file an answer within twenty days. Cetragpa did not return the acknowledgment form, and therefore personal service was required. The plaintiff argues that because the summons and complaint were hand-delivered, rather than mailed, the failure to return a signed acknowledgment was irrelevant.

The Court finds that this situation is governed by the Fourth Circuit's ruling in *Armco, Inc. v. Penrod–Stauffer Building Systems, Inc.*, 733 F.2d 1087 (4th Cir.1984). In that case, the plaintiff attempted service under former rule 4(c)(2)(C)(ii), and the defendant did not return the acknowledgment form. The court held that by electing to proceed under former Rule 4(c)(2)(C)(ii), the plaintiff was bound by its literal requirements.

In that case, as in this one, the defendant received a form, informing it that service was being made under 4(c)(2)(C)(ii), requesting that the acknowledgment form be signed and returned, and apprising the defendant of the consequences of failing to return the signed form. The *Armco* court noted that according to the acknowledgment form the defendant had the right to take no action. The fact that the defendant had actual notice of the lawsuit was no reason to excuse the plaintiff's failure to properly serve "when the means employed engender[ed] the type of confusion which the defendant's officers reasonably experienced here...." *Armco*, 733 F.2d at 1089. This Court holds that Cetragpa was entitled to rely on the clear language of plaintiff's acknowledgment form and to wait for proper personal service.

## V.

The Clerk is **DIRECTED** to send copies of this opinion and order to counsel of record.

IT IS SO **ORDERED**.