# Richmond

## PROTESTANT EPISCOPAL HIGH SCHOOL IN VIRGINIA *v.* F. D. PARRISH.

March 11, 1937.

Present, Campbell, C. J., and Hudgins, Gregory, Browning and Spratley, JJ.

The opinion states the case.

*Gardner L. Boothe,* for the plaintiff in error.

*Frank L. Ball,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

The plaintiff, F. D. Parrish, brought an action at law against the defendant, Protestant Episcopal High School, a corporation, and recovered a verdict and judgment against it in the sum of $2,362.50, which is before us upon a writ of error.

The plaintiff, on September 15, 1933, was the owner of a tract of land containing 8.8204 acres, located in Fairfax county and lying to the north of lands belonging to the defendant, on which latter property there has been conducted for nearly a century a famous school for boys. On this tract of land owned by the plaintiff was situated a large residence equipped with modern conveniences; also, several out-buildings were situated within the curtilage.

While it appears that the defendant had no immediate use for the property, yet, due to the proximity of this land to the land of defendant and in order to forestall a sale and subdivision thereof to undesirable persons, the defendant was desirous of acquiring it.

On September 15, 1933, this contract for the sale of the land was executed:

"The said parties of the first part agree to sell to the said party of the second part and to convey by general warranty deed all that tract or parcel of land belonging to the said F. D. Parrish in Fairfax county, Virginia, and containing 8.8204 acres, together with all buildings and improvements thereon and with all rights and appurtenances to the same belonging, free of encumbrances, for the sum of eighteen thousand dollars ($18,000.00) cash, and the said party of the second part agrees to comply with the terms of sale within thirty days from this date provided the title to the above de-scribed property is good in absolute fee simple in the said F. D. Parrish or is subject to liens all of which can be paid with the purchase money so as to give a clear title to the party of the second part.

"2. The party of the second part, in consideration of this sale at this time to it, agrees that the parties of the first part may continue to occupy the dwelling on the said property and the outbuildings immediately adjoining, with right of ingress and egress to and from the same, for a period of three (3) years from the date that this sale is consummated, free of rent, with the understanding and agreement that the said parties of the first part are to keep the buildings in as good condition as they now are during the said term of three years, reasonable wear and tear excepted.

"3. In the event that any taxes are assessed against the said house and outbuildings by reason of the fact that they are occupied by the parties of the first part during said three year period, then the said parties of the first part covenant and agree to pay said taxes when and as the same are due.

"4. It is mutually covenanted and agreed that taxes, fire insurance and interest are to be adjusted up to the date of consummation of sale.

"5. The parties of the first part acknowledge the receipt of five hundred dollars ($500.00) on account of the pur-chase price of the aforesaid property, which said sum is to be credited on the purchase price when the sale is consum-mated and which said sum is to be returned in the event that

the examination of the title discloses any defect in the title of the said F. D. Parrish to the said property, in which event this contract shall become null and void."

A short while after the execution of the contract, plaintiff and his wife conveyed the property to the defendant and received therefor the sum of $18,000. They continued to occupy the dwelling until January 29, 1934, when the same was burned, together with some of the outbuildings.

The defendant collected the insurance on the dwelling, which amounted to the sum of $8,711.47.

A short time after the conflagration the plaintiff demanded of the defendant the return to him of a reasonable rental value for that portion of the unexpired three-year period, but with this demand defendant refused to comply. Thereupon, plaintiff brought this action by notice of motion.

Upon the call of the case defendant filed a demurrer which was overruled. Thereafter the case was tried by a jury and resulted in the aforementioned verdict for the plaintiff.

It is assigned as error that the trial court erred "in overruling the demurrer; in granting the instruction asked for by the plaintiff; in refusing the instructions asked for by the defendant; in overruling the motion of the defendant for a new trial and in declining to enter judgment for the defendant, on the ground that neither the law controlling the case nor the evidence offered justified a verdict for the plaintiff."

It is, in our opinion, unnecessary to discuss *seriatim* the various assignments of error, for the very good reason that they all relate in fact to the sole question in the case, viz: Was the right of occupancy by the plaintiff, after the sale, a part of the consideration?

The negotiations for the purchase of the property may be thus summarized:

Several years prior to the sale in the instant case, plaintiff had sold to the defendant approximately seventeen acres of land adjoining the dwelling-house property. In the fall of 1933, Mr. Arthur Herbert, a member of the board of trustees of the defendant, acting upon information that

plaintiff would sell the property and that defendant would be willing to pay as high as $18,000 for it, sought an interview with plaintiff relative to a sale of the property to the defendant. Several interviews were had between plaintiff and Herbert, who acted as representative of the defendant. Plaintiff priced the property at $30,000. Herbert countered with an offer of $12,000. After lengthy discussion in which plaintiff demanded that as a part of the consideration he was to have what he called a lease of the property for three years, Herbert offered to pay $17,000 and give plaintiff the use of the property for a period of two years. Plaintiff refused this offer, on the ground that his children were in school in the neighborhood and he was not anxious to disturb them, and then made a counter-offer of $21,000, with the privilege of remaining three years. As hereafter shown by the evidence of both plaintiff and Herbert, the agreement finally reached was a sale for $18,000, coupled with occupancy of three years.

In his examination as a witness, plaintiff testified positively that without the lease of three years he would not have entered into the contract of sale, and that it was upon his insistence that the second paragraph was incorporated in the contract.

Mr. Herbert, upon cross-examination, testified in part as follows:

"Q. On the day that you offered the $17,000 whichever day that was, didn't you talk some about occupancy that day for some length of time?

"A. Mr. Parrish, the day we closed this deal, insisted on the three years, yes, and gave his reason on account of his children being in school.

"Q. When you offered the $17,000, did you offer it coupled with occupancy of two years?

"A. I did.

"Q. And he refused to accept that?

"A. He refused to accept that.

"Q. When you offered the $18,000, didn't you couple that with an offer of three years?

"A. No, it was still two.

"Q. And he insisted on making it three?

"A. Yes, he did.

"Q. For three years, and you finally agreed on $18,000 and three years?

"A. Yes.

"Q. And then he accepted that and you agreed upon it out at his house that that should be the price?

"A. We agreed upon it out there.

"Q. And you went to Mr. Boothe's office for the purpose of reducing that to a contract?

"A. Reducing that to a contract, yes."

\* \* \* \* \* \* \* \*

"Q. But you did consider the offer of three years' tenancy of value to Mr. Parrish? You knew that was of value to him?

"A. Yes."

The only other witness who testified in regard to the execution of the contract was Mr. Boothe, who testified:

"I am very reluctant to testify in any case, but when Mr. Parrish and Mr. Herbert came to my office for the preparation of this contract or agreement, the arrangements for sale had already been completed, and my understanding was that the sale was to be for the sum of $18,000 cash, which I knew to be the maximum amount that had been passed by the resolution of the Board of Trustees of the Episcopal High School. I was a member of that Board.

"To the best of my recollection at that time Mr. Herbert and perhaps Mr. Parrish both told me that they had an arrangement whereby Mr. Parrish was to remain on the property for a period of three years. I am quite certain that Mr. Parrish at that time stated to me that his reason for wishing to remain on the property for a period of three years was that his children were being educated in the schools of the neighborhood, and therefore he wanted to remain for that period. He also may have mentioned something about the neighborhood, the close proximity to the Theological Seminary, but I do not remember.

"The provision was made that he should remain for a period of three years, and I am also quite certain that I mentioned to him at the time that the Episcopal High School did not need the property at the present time. They were rounding out their buildings there, that naturally they did not want any subdivisions of negro houses in the neighborhood—there are lots of colored people in the neighborhood, and they were buying the property for future developments and probably would not want to use it until some more of the teachers were married, and they built homes for the teachers who were married. Nothing was said about any rental value of the property, to me, at any time. If there was any rental value on that property, I do not know it, but I very definitely had in mind that the $18,000 was the consideration, and nothing was said about any fire. Had anything been said about it, it certainly would have been put in that agreement.

"There was a provision put in the agreement that I remember distinctly. I mentioned at the time that we were not to be put to any further expense, and the provision was put in the third clause of the agreement that in the event of taxes on that property Mr. Parrish would pay the taxes. He was to keep the property up as long as he was there. That is all I know personally about the proposition as I was not present at the conference Mr. Herbert had with him."

Though it is earnestly argued in the brief of defendant that the oral evidence of plaintiff was an effort to vary the terms of the contract, it plainly appears from the record that no objection was offered to this evidence in the trial court. On the other hand the evidence of Herbert and counsel for defendant was likewise without objection. Even though the evidence of plaintiff had been objected to, we think it was admissible on the ground that it tended to clarify that language in paragraph two of the contract dealing with the actual consideration agreed upon by the parties.

In *McCorkle & Son* v. *Kincaid*, 121 Va. 546, 93 S. E. 642, 644, Judge Prentis laid down this applicable rule:

"The antecedent conversations and agreements between the parties, so far as they are in conflict with the written contract, cannot, of course, be received to vary or contradict it, but if its meaning be doubtful the surrounding circumstances, the condition and avowed purposes of the parties, as well as the subject matter of the contract, may be proved by parol testimony in order to enable the court to determine its meaning."

The verdict of the jury comes to us with the stamp of approval of the trial court, and it is our conclusion that there has been a fair trial of the case upon the merits and that the judgment is plainly right.

*Affirmed.*

HUDGINS and SPRATLEY, JJ., dissenting.