# Richmond

IVEY ALLEN HARRELL, EXECUTRIX OF THE ESTATE OF LELIA
STANT ALLEN, DECEASED, ET AL. V. J. M. ALLEN.

March 5, 1945.

Record No. 2877.

Present, All the Justices.

The opinion states the case.

*E. Peyton Turner* and *William Old*, for the appellant.

*L. R. Slagle* and *L. J. Hammack*, for the appellee.

EGGLESTON, J., delivered the opinion of the court.

By deed dated January 12, 1935, Virginia-Carolina Joint Stock Land Bank conveyed to Ivey Allen a farm of 196.5 acres, with the buildings and improvements thereon, near Emporia, in Greensville county, Virginia. It was the same land which had been owned by Mrs. Lelia Stant Allen, the mother of Ivey Allen, and which the Bank had bought in at a foreclosure sale in the early part of December, 1934.

By deed dated January 25, 1935, Ivey Allen conveyed the property to her brother, J. M. Allen, subject to a $2,800 deed of trust which she had given to E. Peyton Turner, trustee, to secure a part of the purchase price. For reasons which will be hereinafter related, J. M. Allen did not record his deed to the property.

On January 15, 1941, Ivey Allen conveyed the property to L. C. Harrell, Jr., trustee, to secure a note of $3,700

made by Ivey Allen and J. M. Allen. A part of the proceeds of this loan was used to pay off the Turner deed of trust of $2,800, and that deed is not involved in the present proceedings.

By deed dated April 3, 1942, and recorded on the same day, Ivey Allen conveyed the land to her mother, Lelia Stant Allen.

On November 7, 1942, L. C. Harrell, Jr., trustee, sold the property at public auction under the terms of his deed of trust and it was bid in by J. M. Allen for the sum of $12,-150. After the payment of the expenses of the sale, the debt secured, and some small liens on the property, there remained in the hands of the trustee the sum of approximately $7,400. The present controversy involves the disposition of this surplus between J. M. Allen and Lelia Stant Allen, the two adverse claimants thereto.

J. M. Allen filed his bill in the court below alleging that while the Virginia-Carolina Joint Stock Land Bank had deeded the property to Ivey Allen, he had in fact purchased and paid for it, that title was taken in the name of his sister, Ivey Allen, at his request and upon the understanding that she would immediately convey the property to him, that she had done so by her deed dated January 25, 1935, and that although he had not recorded this deed, his mother, Lelia Stant Allen, had actual knowledge thereof when she accepted a deed to the property from Ivey Allen in April, 1942. Therefore, the plaintiff alleged, he was entitled to the surplus in the hands of the trustee, and the prayer was that the trustee be required to pay it to him. Lelia Stant Allen, Ivey Allen, and L. C. Harrell, Jr., trustee, were made parties defendant to the bill.

Lelia Stant Allen filed an answer and cross-bill. She denied that J. M. Allen had purchased and paid for the property and that title thereto had been taken in the name of Ivey Allen upon the understanding that she would convey it to J. M. Allen. She denied that when she received her deed from Ivey Allen she had knowledge of the prior deed to J. M. Allen, relied upon by him. She alleged that Ivey

Allen had purchased the property for her, Lelia Stant Allen, and that title had been taken in the name of Ivey Allen because certain judgments had been docketed in the clerk's office against her, Lelia Stant Allen, which "made it impossible to take title in the name of respondent." She prayed that the surplus in the hands of the trustee be paid to her.

Ivey Allen filed an answer which supported the contention of her mother. Moreover, she alleged that her signature to the deed which she gave J. M. Allen was procured by fraud, that she had signed the instrument without reading it, and relying upon his representation that it was a crop lien.

L. C. Harrell, Jr., trustee, in his answer, evinced a readiness to pay the surplus in his hands to either of the two claimants as the court might direct. Subsequently his account was approved by the court, the surplus in his hands was paid into the registry of the court, and he was dismissed as a party. The only remaining parties before the court were J. M. Allen and Mrs. Allen, the respective claimants of the fund, and Ivey Allen.

Lelia Stant Allen died, September, 1943, and the cause was revived in the name of her executrix, Ivey Allen Harrell, who in the meanwhile had married one John Harrell.

After the evidence had been heard *ore tenus* the trial court entered a decree fully sustaining the contentions of J. M. Allen and directing that the surplus fund be paid to him. From this decree Ivey Allen Harrell, as executrix of Lelia Stant Allen, and in her own right, has appealed.

The first assignment of error is that the lower court erred in holding that J. M. Allen personally purchased the property from the Virginia-Carolina Joint Stock Land Bank, paid for it, and occupied it as his own. In short, the contention is that he purchased the property, not for himself, but for his mother, in order that she might continue to make her home thereon as she had done since the death of her husband in 1921.

This assignment presents merely a question of fact which the trial court has resolved against the appellants on

conflicting evidence. Since it saw and heard the witnesses its finding has the force and effect of a jury's verdict, and, if based on credible evidence, is binding on us. *Lowdon* v. *Lowdon, ante*, pp. 78, 79, 31 S. E. (2d) 271, and authorities there cited.

■ There is ample evidence to support this finding of the lower court. It appears that Lelia Stant Allen and her husband, R. H. Allen, had lived on the farm from 1896 until his death in 1921. Of their several children only J. M. Allen and Ivey Allen remained there at the time the Virginia-Carolina Joint Stock Land Bank foreclosed its mortgage and bought in the property in December, 1934. Immediately thereafter J. M. Allen took steps to purchase the property from the Bank. He made a cash payment of $250, sold a part of the timber for $550, obtained a mortgage loan on the farm from E. Peyton Turner, trustee, of $2,800, and secured the balance of $730.80 by a chattel mortgage on certain personal property. The purchase was consummated and the necessary papers were recorded on January 25, 1935. On the same day Ivey Allen executed, acknowledged and delivered to J. M. Allen a deed conveying the property to him subject to the $2,800 mortgage. This latter deed was not recorded, as J. M. Allen frankly admitted, because of certain judgments which had been docketed against him, and which he said he desired and intended to pay out of the proceeds of the farm, if not embarrassed by his creditors. It is undisputed that these debts have been discharged and no rights of any creditors are involved.

There is evidence that J. M. Allen was successful in his farming operations. As the result of the improvements which he placed thereon the value of the property was increased from $3,000 to $4,000, according to the testimony of his neighbors. The chattel mortgage was discharged and the Turner, trustee, loan refinanced by that from Harrell, trustee. In the meantime, J. M. Allen had discharged the judgments which had been docketed against him and his mother.

It is true that his mother and his sister continued to

live on the farm and attended to the household duties, but there is no evidence to support the allegations in Mrs. Allen's answer and cross-bill that he purchased the property for her, or that she or her daughter had any income from which they might have purchased it. On the other hand, there is direct evidence from J. M. Allen, which the court has accepted, that he paid for the property out of his own funds and farmed the land· as his own.

It is next said that the trial court erred in finding that when Mrs. Allen accepted the deed to the property from Ivey Allen, she (Mrs. Allen) had knowledge of ·the prior deed which Ivey had made to J. M. Allen.

This, too, is a question of fact resolved by the lower court against the appellants on conflicting evidence, and which we cannot disturb if based on credible evidence. That it is sustained by the evidence is not debatable. J. M. Allen testified positively that his mother knew, at the time the purchase of the property from the Bank was consummated, why the title could not be taken in his name, that it was taken in Ivey's name, and that the latter had given him a deed therefor.

The three members lived in peace and in harmony until J. M. Allen told his mother and sister in 1941 of his intention to get married. The brother and sister quarreled and, as a result, Mrs. Allen and Ivey left home. Ivey admitted that her mother had suggested that she, Ivey, try to sell the farm to one Raymond B. Purdy for the purpose of "killing" the deed which Ivey had given to her brother and which he had not recorded. But Purdy was not interested, and shortly thereafter Ivey deeded the property to her mother, but not until the latter, almost simultaneously therewith, had executed her will leaving all of her property, "both real and personal," to Ivey, and expressly excluding each of the other Allen children by name.

It is true that Ivey testified that she was persuaded by her brother to execute the instrument, which she later found out was a deed conveying the property to him, upon the representation that it was a crop lien. But her testimony is

in direct conflict with that of her brother who is fully corroborated by counsel who prepared this and the timber deed and who represented J. M. Allen in consummating his purchase of the property from the Bank. Both of these witnesses testified that the deed by which Ivey conveyed the property to her brother was read by and explained to her.

The deed which Ivey Allen delivered to the property, though unrecorded, was valid between the parties. Code, sec. 5194, as amended, requires recordation of such an instrument for the purpose of notifying purchasers for value *without notice* from the grantor and the latter's lien creditors. A purchaser *with notice* of a prior deed by his grantor takes subject to such deed even though not recorded. 2 Minor on Real Property, 2d Ed., sec. 1306, p. 1769, and authorities there cited.

Therefore, since there was ample evidence to sustain the trial court's finding that Mrs. Allen had actual notice of her son's prior deed to the property, the conveyance to her was subject to her son's rights therein.

Neither is there any merit in the contention that because the deed from Ivey Allen to J. M. Allen was not intended to be recorded forthwith there was no legal delivery of the instrument. The fact that the deed was not recorded or intended by the grantee to be recorded does not show a lack of legal delivery by the grantor or a lack of acceptance by the grantee. As we have just seen, recordation of a deed is for the purpose of giving constructive notice to lien creditors and subsequent purchasers. It is not necessary to a legal delivery of the instrument.

The final contention of the appellants is that the lower court erred in granting any affirmative relief to J. M. Allen because, it is said, his own testimony shows that he came into equity with "unclean hands" in that he withheld from record the deed which he received from Ivey Allen for the purpose of hindering, delaying and defrauding his creditors. In support of this contention appellants rely upon *Nunnally* v. *Stokes*, 116 Va. 472, 82 S. E. 79; *Wilburn* v. *Wheeler*, 179 Va. 604, 19 S. E. (2d) 677; and *Lambert* v. *B. F. Corp.*,

182 Va. 477, 29 S. E. (2d) 383, which illustrate the principle that a court of equity will not aid one to recover back property which he has conveyed to another to defeat his threatening creditors, even after the claims of the creditors have been satisfied, but will leave the parties as it finds them.

It is not necessary that we stop to consider whether the act of the appellee, J. M. Allen, in withholding the deed from record was intended to hinder, delay or defraud his creditors. He insists that it was not, that it was done for the purpose of, and enabled him the sooner to pay them off. Neither do we have to decide whether he is substantially in the same position as one who has put his property beyond the reach of his creditors and is now seeking the aid of a court of equity to recover it. That he is not precisely in that position is clear. He is not seeking to set aside any conveyance made by him, nor is he asking that the property be reconveyed to him. He merely stands upon the fact that he has a prior deed to the property which is good as between him and the adverse claimant.

But assuming that the strict application of the maxim of "clean hands" would ordinarily preclude a hearing of his case, nevertheless we are of opinion that the trial court was right in not dismissing his bill and was right in disposing of the case on its merits.

The record clearly shows that Mrs. Allen was a party to the very transaction which she says was designed to put the property beyond the reach of the appellee's creditors. Her cross-bill alleges that the property was purchased for her and the title taken in Ivey's name because of judgments against her (Mrs. Allen) and J. M. Allen. Indeed, the burden of her first assignment of error is that J. M. Allen purchased the property for her, Mrs. Allen, and not for himself. In other words, she says that the title to the property was taken in Ivey's name for the purpose of putting it beyond her (Mrs. Allen's) creditors.

Moreover, the record further shows that Mrs. Allen entered into a scheme with her daughter to sell the property to Purdy, and failing in that, to take title thereto in her (Mrs.

Allen's) name in order to avoid the effect of the unrecorded deed which she knew J. M. Allen held.

Therefore, had the trial court dismissed the bill of J. M. Allen and denied him affirmative relief because of his "unclean hands," by the same reasoning it should have dismissed Mrs. Allen's cross-bill and denied her affirmative relief. This would have left the surplus from the deed of trust sale either in the hands of L. C. Harrell, Jr., trustee, or in the registry of the court. In either event, further litigation between the identical claimants would have been necessary to have decided which was entitled to the fund in controversy.

While the "clean hands" doctrine is a wholesome one, it is not absolute and has its limitations. 30 C. J. S., Equity, sec. 98, pp. 487 *ff*. It will not be applied where an inequitable result would be reached. *Comstock* v. *Thompson*, 286 Pa. 457, 133 A. 638, 640. Its purpose is to secure justice and equity, not to aid one in acquiring property to which he has no right. *Sliman* v. *Moore*, 198 Ark. 734, 131 S. W. (2d) 1, 3. In *Waller* v. *Eanes*, 156 Va. 389, 399, 157 S. E. 721, we held that it should not be applied where the result would be contrary to public policy.

Neither should the maxim be applied where, as here, the result would be to leave the property in controversy in the hands of one who has no claim thereto, or to require further litigation between the respective claimants, although they be *in pari delicto*. It serves no good purpose to turn litigants out of court in one proceeding if they must be immediately convened in another.

The deed under which Harrell, trustee, sold the property provided that the surplus, if any, should be paid to "Ivey Allen, her personal representatives, heirs or assigns." Since J. M. Allen, by virtue of his deed to the property, was the prior assignee of Ivey Allen, and since Mrs. Allen, when she received her deed, had actual knowledge of the prior deed to her son, the trial court correctly held that Mrs. Allen's rights were subordinate to those of J. M. Allen and that he was entitled to the surplus now in the registry of the court.

■■ The fact that the conduct of J. M. Allen, in withholding his deed from record, might have been in fraud of his creditors did not invalidate the instrument as between the parties. *Wilburn* v. *Wheeler, supra* (179 Va. 604, at page 606, 19 S. E. (2d) 677, at page 678); *Lambert* v. *B. F. Corporation, supra* (182 Va. 477, at page 487, 29 S. E. (2d) 383, at page 387).

The decree appealed from is

*Affirmed.*