THE ANDEN GROUP AND MIDEN CORPORATION

V.

LEESBURG JOINT VENTURE, EXETER PROPERTIES, INC.
AND HOMET, INC.

Record No. 870278

March 3, 1989

Present: All the Justices

*Arthur B. Vieregg, Jr. (W. Michael Holm; Hazel, Thomas, Fiske, Beckhorn & Hanes, P.C.,* on briefs), for appellants.

*Earl C. Dudley, Jr. (Carl S. Kravitz; Nussbaum, Owen & Webster,* on brief), for appellees.

LACY, J., delivered the opinion of the Court.

This is an appeal from a trial court decision that three separate contracts for the purchase and sale of three parcels of land were integrated into one unitary contract covering all three parcels. The trial court also found that this unitary contract subsequently was breached by the purchaser when he offered to close only on two of the three parcels.

In May 1985, three contracts were executed by the Anden Group (Anden), a California residential development corporation. Two of these contracts were with Leesburg Joint Venture (LJV), a partnership formed to develop various properties in the Exeter Subdivision in the town of Leesburg. The first contract provided that LJV would sell a parcel of land zoned for hotel and conference center use to Anden for $6,000,000. A deposit of $10,000, a settlement date of August 28, 1985, and a feasibility study also were included as terms of the contract.

Under the second contract, Anden agreed to purchase a parcel of land zoned for Planned Unit Development (the PUD contract) from LJV for $6,300,000. Similar to the first contract, the terms of this contract included a deposit of $50,000, a settlement date of August 28, 1985, and a feasibility study.

The third contract was between Anden and Homet, Inc. (Homet), and provided that Homet would sell Anden land zoned for 260 condominium units for $1,300,000. It required a deposit of $20,000, a feasibility study, and an October 1985 closing date. This contract also required Anden to purchase the parcel without a feasibility study if Homet received another offer during the feasibility stage.

All three contracts were executed on May 22, 1985, by James F. Joyce, on behalf of Anden, and by Robert G. Varnon, on behalf

of Homet, Inc. and LJV.[1] Each of the three contracts contained a separate and specific liquidated damages clause for breach of contract. In June and July of 1985, a series of conversations were had and documents were exchanged among representatives of Anden, Homet, and LJV regarding the three properties. On September 24, 1985, Anden advised Varnon through counsel that it would default on the contract to purchase the hotel parcel and forfeit its deposit. Anden, however, still wished to proceed on the purchase of the PUD and condominium parcels. Varnon demanded that Anden close on all three properties.

Anden filed a bill of complaint seeking a declaratory judgment, contending that its failure to purchase the hotel parcel did not relieve LJV and Homet from the duty of fulfilling their contracts on the PUD and condominium parcels. LJV and Homet denied that the contracts were separate, and filed a cross-bill seeking damages, interest, and expenses based on Anden's alleged breach of contract. Anden filed an amended bill of complaint seeking specific performance or, alternatively, damages.

After hearing the evidence, the trial court found that a unitary contract existed and held that Anden had breached that contract.[2] The court awarded LJV and Homet liquidated damages under the contracts of $80,000 plus reasonable attorneys' fees, and $137,232.20 in interest, as agreed to in the contracts, for the period from August 28 to September 25, 1985.

Anden noted nine assignments of error and has presented six questions on appeal. The dispositive question, however, is whether the trial court properly admitted parol evidence to determine that a unitary contract existed. To answer this question we must review the contracts and associated writings and the appropriate standard for allowing parol evidence.

---

[1] Robert G. Varnon was the president and sole stockholder of Homet, Inc. During the time relevant here, the managing general partner of LJV was Exeter Properties, Inc. Varnon was the sole stockholder and president of Exeter Properties, Inc.

[2] The trial court also held that Anden did not deal in good faith with LJV and Homet. Anden has not pursued this issue on appeal. As a result, LJV and Homet have moved to dismiss this appeal. They argue that Anden filed this cause in equity seeking specific performance. Waiver of the equitable issue of good faith, they contend, makes the equitable remedy of specific performance unavailable. We deny this motion. Although brought as a cause in equity, Anden sought damages as an alternative to specific performance. *Harrell v. Allen*, 183 Va. 722, 732, 33 S.E.2d 222, 226 (1945).

The parties agree that three separate contracts existed in May of 1985 when they were executed. All parties also agree that the contracts were modified at a meeting held on June 20, evidenced by a written document of that date, and that the understanding of the parties was further reflected in a letter dated July 2, 1985.

On June 19, Joyce, on behalf of Anden, wrote two letters, one to Homet and the other to LJV. The June 19 letter to LJV contained the following proposals relevant to the hotel and PUD parcels:

4. Anden wants a price reduction of the [sic] $1,000.00 a unit on the remaining 817 units in the P.U.D.

5. Anden wants the settlement date on all contracts to be September 30, 1985.

Acceptance of this letter will officially drop the feasibility period and firm up the contracts.

The June 19 letter to Homet referenced the 260 condominium units, offering to drop the feasibility period "if the conditions on the P.U.D. contract are acceptable." The referenced conditions and contract were not contained in the letter.

A meeting was held on June 20 to discuss these proposals. A written document of that date was signed by Varnon and Joyce and reflected the following:

1. Washington Homes will be removed from Exeter PUD.

2. Exeter will reduce the price by $817,000. *PUD Contract.*

3. Anden will pay 14% interest to Leesburg Properties from August 28, 1985 until settlement., *but no later than Sept. 30, 1985*

4. If IMG will release the contract, Anden will purchase the 350 garden units. @ the IMG contract price $1,750,000

Acceptance of the above will officially drop the feasibility period and firm up the contracts.

The emphasized language was handwritten and initialed by the parties.

On June 28 another letter was sent to Anden on behalf of Varnon asking for agreement on six items not covered in the June

20 document. Only one item is relevant to our discussion. That item stated that "[t]he contract for the 260 garden condos will settle per the June 19 and June 20th letters."

The final pertinent document is a July 2, 1985, letter from Anden to Varnon. This document indicated Anden's willingness to proceed with the "various Agreements of Sale between Anden and Leesburg Joint Venture and Homet," provided three terms were confirmed. The terms to be confirmed were:

1. The Washington Homes Agreement is terminated and Anden is purchasing all of the units under its PUD Contract with the total purchase price to be $5,483,000.00.

2. Anden will pay interest at the rate of 14% per annum upon the unpaid balance on all of the Agreements from August 28, 1985 until settlement, but in no event shall settlement occur later than September 30, 1985.

3. As part of the consideration hereof, if you obtain a release of the IMG Contract, Anden agrees to purchase the property which is the subject thereof for $1,750,000.00 in cash with all terms and conditions of sale to be the same as under the PUD 817 Unit Agreement of Sale.

Your acceptance hereof shall be deemed to be an Addendum to the various Agreements of Sale.

While Varnon did not execute this document, the parties agree that the document accurately supplemented prior writings. Varnon's failure to countersign was due to an inaccurate statement regarding the termination of the Washington Homes contract which did not in fact occur until after September 30.

The trial court found that, until default, Anden initially and continually had sought to purchase the parcels as an entire unit. Next, the court pointed to the July 2, 1985, letter confirming Anden's willingness to proceed on all of the contracts as an "affirmation of their interdependency." The court also found that the $817,000 price concession by Varnon was "done on the basis that Varnon had negotiating room in the hotel/conference center site." By accepting the price concession, setting a similar closing date, and expressing its willingness to proceed on all contracts, Anden "created the inescapable conclusion that the contracts were interdependent." The court relied on parol evidence, particularly to es-

tablish the purpose and intent of the $817,000 reduction in the purchase price.

■ The law on parol evidence is clear. It may not be admitted to contradict or vary the clearly expressed terms of a written agreement. *McComb* v. *McComb*, 226 Va. 271, 274, 307 S.E.2d 877, 879 (1983) (quoting *Godwin* v. *Kerns*, 178 Va. 447, 451, 17 S.E.2d 410, 412 (1941)); *see also Walker & Laberge Co.* v. *Bank*, 206 Va. 683, 689, 146 S.E.2d 239, 243-44 (1966). It can be admitted to clarify ambiguous terms as well as additional or supplemental terms and agreements that are not inconsistent with the original writing. *Amos* v. *Coffey*, 228 Va. 88, 92, 320 S.E.2d 335, 337 (1984); *Godwin* v. *Kerns*, 178 Va. 447, 451, 17 S.E.2d 410, 412 (1941). The threshold question for our consideration is whether the writings set out above are clear and unambiguous or whether parol evidence is needed to clarify or supplement all or some of the contract terms.

In its June 19 letter, Anden sought a $817,000 reduction in the sales price for the PUD. The June 20 memorandum and July 2 letter reflect that Anden received that reduction of $817,000. The plain language of the July 2 letter, "total purchase price to be $5,483,000.00," is the original price of the PUD contract less $817,000. The plain language of item 2 in the June 20 memorandum, "Exeter will reduce the price by $817,000. *PUD contract*," clearly places the price reduction solely on the PUD contract.

LJV and Homet maintain that admission of parol evidence on the issue of a unitary contract was proper here because Varnon would not have given the price concession of $817,000 if Anden was not simultaneously committed to purchase all three parcels of land; that unification of the contracts was the true consideration given in exchange for the reduction in purchase price. They rely on *Protestant Episcopal H. S.* v. *Parrish*, 168 Va. 103, 190 S.E. 146 (1937), and *Sale* v. *Figg*, 164 Va. 402, 180 S.E. 173 (1935), for the proposition that parol evidence is admissible to show the true consideration agreed upon. In both of these cases, however, the parol evidence related to ambiguous issues or issues not addressed in the contract. Here, the parol evidence relied on by LJV and Homet directly contradicts the written documents.

In its June 19 letter, Anden sought a settlement date of September 30 on "all contracts." The June 20 and July 2 letters reflected that Anden had received a September 30 outside settlement date, but obviously had to agree to pay interest for a period

on unpaid balances. In exchange for accepting these terms, Anden offered, and Varnon accepted, to dispense with the feasibility periods as evidenced by the June 19 and 20 documents.

As demonstrated above, the $817,000 reduction in price does not establish or suggest that the three contracts were interdependent because that price reduction plainly related to only one contract. That claim was the heart of LJV's unification theory; it must be rejected. Nor are we persuaded that simultaneous closing dates, or an expressed willingness to proceed to settle on all three contracts suffices to turn three contracts into one. Those matters merely suggest that the purchases were intended to be coordinated not that they were intended to be one. The continued reference to "contracts," the separate letters regarding separate contractual entities (Homet and LJV), and the fact that neither of the two sellers could alone meet the single sales obligation to convey three parcels under a unitary contract further establishes the continued viability of three separate contracts subsequent to the June and July modifications.

We conclude that the trial court improperly admitted parol evidence which contradicted the unambiguous terms of a written contract. We, therefore, will reverse the trial court's judgment awarding damages to Leesburg Joint Venture, Exeter Properties, Inc., and Homet, Inc., and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*