## Aetna Casualty and Surety Company, et al.

## v.

## The Fireguard Corporation

Record No. 940444

March 3, 1995

Present: All the Justices

*Thomas M. Hogan* for appellants.
*Tina L. Snee (Slenker, Brandt, Jennings & Johnston*, on brief), for appellee.

JUSTICE STEPHENSON delivered the opinion of the Court.

The sole issue in this appeal is whether the trial court erred in ruling, as a matter of law, that a plaintiff was not a third-party beneficiary of a contract.

I

Aetna Casualty and Surety Company (Aetna) and Quincy Station Apartments Limited Partnership (Quincy) filed a motion for judgment against The Fireguard Corporation (Fireguard). Aetna, as a subrogee of its insureds, and Quincy, as an owner, alleged that Fireguard had agreed to indemnify Quincy in a certain contract between Fireguard and Cranshaw Construction, Inc. (Cranshaw).

Fireguard filed a "motion to dismiss" the motion for judgment. After considering the allegations in the motion for judgment, the contract, and an affidavit executed by a Cranshaw officer, the trial court granted the motion to dismiss. Aetna and Quincy appeal.

## II

Although the trial court ruled on what was called a "motion to dismiss," the pleading in reality was a motion for summary judgment.* A motion for summary judgment should not be granted if any material fact is genuinely in dispute. Rule 3:18. When a trial court considers a motion for summary judgment, it must adopt from the facts those inferences that are most favorable to the non-moving party, unless the inferences are forced, strained, or contrary to reason. *Commercial Business Systems, Inc.* v. *BellSouth Services, Inc.*, 249 Va. 39, 41-42, 453 S.E.2d 261, 264 (1995).

### A

### *Allegations in the Motion for Judgment*

Quincy was the owner of a building project involving the construction of a ten-story, 222-unit apartment building in Arlington County (the Quincy project). Aetna issued a master policy of insurance to National Development Corporation (National) and its affiliates and subsidiaries (collectively, the policyholders), agreeing to indemnify the policyholders for damages to Quincy's building. Fireguard entered into a subcontract with Cranshaw, the general contractor, for the construction of a fire protection system at the Quincy project (the Contract). Fireguard agreed to furnish all materials, equipment, labor, and supervision necessary to perform the work and to indemnify the "Owner" and the "Contractor" (Cranshaw) against damage, loss, claims, suits, actions, expense, liability, or obligation of any kind by reason of or arising from any actions of Fireguard, its agents, employees, or subcontractors.

In March 1989, Fireguard negligently conducted tests of the fire pump system it installed at the Quincy project. As a result of Fireguard's negligence, the project suffered extensive water damage, and its completion was delayed. Quincy's damages totalled $380,488.99.

---

* This Court's Rules governing actions at law do not provide for a "motion to dismiss."

After applying the deductible provisions of the master insurance policy, Aetna paid its policyholders $278,135.97 and was subrogated therefor. Consequently, Quincy sustained a direct loss in the amount of the deductible, $102,353.02.

### B

### *Specific Contract Provisions*

The indemnification provisions of the Contract are contained in clause NINTH: (a), which provides, in part, the following:

> The Sub-Contractor shall protect, indemnify and save harmless the Owner and Contractor against damage, loss, claims, suits, actions, expense, liability or obligation of any kind whatsoever by reason of or arising from any actions of Sub-Contractor, its agents, employees or Sub-Contractors, or from any liability or obligation imposed by law upon the Owner or Contractor for damage because of bodily injuries including death at any time resulting therefrom, sustained by any person or persons, or on account of or in consequence of the performance of this contract by Sub-Contractor, its agents, employees, or Sub-Contractors, whether or not such injuries to persons or damage to property are due or claimed to be due to any negligence of the Sub-Contractor, his employees, his agents, or sub-contractors of Sub-Contractor herein and Sub-Contractor shall bear any expense which the Contractor may have by reason thereof, or on account of being charged therewith.

Three other provisions of the Contract are also pertinent to the issue in this appeal. Subparagraph (d) of clause FIRST reads as follows:

> THE EQUAL OPPORTUNITY CLAUSE, NON-DIS-CRIMINATION AND WAGE CLAUSES and Executive Orders relating thereto as referred to in the Supplementary General Conditions of the Contractor's Agreement with Owner, namely National Development Mid-Atlantic, Inc. are herewith made part of this contract. Subcontractor specifically agrees to abide by and comply with the terms and intent of said clauses and provisions. Violation thereof shall be good cause for termination of this Agreement.

Exhibit 5 to the Contract, entitled "LENDER PROVISIONS for Quincy Street Station, 1001 North Randolph, Arlington, Va.," contains the following provision:

For purposes of this Exhibit 5, notices to Owner shall be sent to: Quincy Station Apartments Limited Partnership, c/o National Development Mid-Atlantic, Inc., 1401 New York Avenue, N.W., Suite 805, Washington, D.C. 20005.

Finally, clause TENTH states, in pertinent part, as follows:

The Sub-Contractor's insurance shall be endorsed with a waiver of subrogation clause with respect to the Owner and neither the Sub-Contractor nor its insurer shall have any claim against the Owner to the extent the claim is or should have been covered by insurance.

## C

### *The Affidavit*

The affidavit considered by the trial court was executed by Cranshaw's Assistant Vice President. The affidavit states that "Cranshaw, as the General Contractor, entered into a certain general construction contract . . . with [Quincy] as the Owner for the construction of [the Quincy project] . . . [and] as General Contractor for [Quincy], Cranshaw entered into a certain subcontract . . . with [Fireguard] for the performance of certain 'Fire Protection System' work related to the Project." The affidavit further provides the following:

THAT, paragraph "*FIRST* (d)" on the second page of the Fireguard Subcontract provides, in part, that certain clauses; "referred to in the Supplementary General Conditions of the Contractor's Agreement with Owner, namely National Development Mid-Atlantic, Inc., are herewith made part of this contract.";

THAT, the reference in said paragraph "*FIRST* (d)", to the Owner as being "National Development Mid-Atlantic, Inc.", was an immaterial and inadvertent error; National Development Mid-Atlantic, Inc. being the original sponsor and developer of the Project, and being affiliated with NDMA

Quincy, Inc., the General Partner of the actual owner of the Project, which was Quincy Station Apartments Limited Partnership;

THAT, the purpose and intent of said paragraph "*FIRST* (d)" was to incorporate certain substantive provisions of the General Contract into the Fireguard Subcontract, and that the reference to the identity of the Owner, although inadvertently erroneous, was only intended to identify the relevant document containing the subject clauses and not to affect the identity of the Owner in any way, said identity being a matter of public record and known to, or discoverable by, The Fireguard Corporation.

### III

Quincy contends that the Contract clearly made the owner of the project a third-party beneficiary of the indemnification provisions and that it was such owner. Quincy further contends that, "at worst," the Contract was ambiguous with respect to the identity of the project's owner and, therefore, it should have been allowed to present evidence on the matter.

Fireguard contends, on the other hand, that the terms of the Contract are clear and unambiguous. Fireguard asserts that, in clause FIRST (d) of the Contract, National is identified as the owner and, therefore, National, not Quincy, is the third-party beneficiary of the Contract.

A person's right to sue as a third-party beneficiary of a contract is governed by Code § 55-22. Code § 55-22 provides, in relevant part, as follows:

If a covenant or promise be made for the benefit, in whole or in part, of a person with whom it is not made, or with whom it is made jointly with others, such person, whether named in the instrument or not, may maintain in his own name any action thereon which he might maintain in case it had been made with him only and the consideration had moved from him to the party making such covenant or promise.

A third party who claims to be the beneficiary of a contract between others must show by the evidence that the contracting

parties clearly and definitely intended to confer a benefit upon him. *Ward* v. *Ernst & Young*, 246 Va. 317, 331, 435 S.E.2d 628, 635 (1993); *Valley Company* v. *Rolland*, 218 Va. 257, 259-60, 237 S.E.2d 120, 122 (1977); *Professional Realty* v. *Bender*, 216 Va. 737, 739, 222 S.E.2d 810, 812 (1976). The third party, however, need not be named in the contract. Code § 55-22.

■ When a contract is complete on its face and is plain and unambiguous in its terms, a court is not free to search for its meaning beyond the contract itself. *Management Enterprises* v. *The Thorncroft Co.*, 243 Va. 469, 472, 416 S.E.2d 229, 231 (1992). When a contract is ambiguous, however, a court should resort to parol evidence to ascertain the true intention of the parties. *The Anden Group* v. *Leesburg Joint Venture*, 237 Va. 453, 458, 377 S.E.2d 452, 455 (1989). An "ambiguity" is defined as " 'the condition of admitting of two or more meanings, of being understood in more than one way, or of referring to two or more things at the same time.' " *Berry* v. *Klinger*, 225 Va. 201, 207, 300 S.E.2d 792, 796 (1983) (quoting Webster's Third New International Dictionary 66 (3d ed. 1976)).

■ In the present case, the contracting parties clearly and definitely intended to confer a benefit upon the "Owner" of the project. The Contract, however, is unclear and ambiguous with respect to the identification of the "Owner." Clause FIRST (d) indicates that National was the owner. Exhibit 5 to the Contract, on the other hand, suggests that Quincy was the owner.

■ From the facts before the trial court, it is reasonable to infer that Quincy, not National, was the owner upon whom the contracting parties intended to confer a benefit. Indeed, Cranshaw's affidavit states that Quincy was the owner and that National, whose name was erroneously placed in the Contract, was merely the original sponsor and developer of the project.

■ We hold, therefore, that the trial court erred in ruling, as a matter of law, that Quincy was not a third-party beneficiary of the Contract. An ambiguity exists with respect to the identification of the owner; therefore, the parties should have been afforded the opportunity to present parol evidence to clarify the matter. *See, e.g., Ward*, 246 Va. at 332, 435 S.E.2d at 636.

Accordingly, we will reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*