COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Moon, Judge Fitzpatrick and
          Senior Judge Hodges
Argued at Alexandria, Virginia

CHARLES MICHAEL GUFFEY

v.       Record No. 2574-94-4        MEMORANDUM OPINION[*] BY
                                     JUDGE JOHANNA L. FITZPATRICK
MARY E. GUFFEY, N/K/A                    NOVEMBER 7, 1995
 MARY E. ROKO

          FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                   Stanley P. Klein, Judge

     James R. Hart (Dixon, Smith & Stahl, on briefs), for
     appellant.

     Sammy S. Knight (Knight & Associates, on brief), for
     appellee.


     In this domestic appeal, Charles Michael Guffey (husband)

argues that the trial court erred in:  (1) enforcing an

indemnification provision of the parties' Property Settlement

Agreement that ordered him to reimburse Mary E. Guffey (wife) for

paying his separate debt that had attached as a lien against the

marital residence, and (2) awarding wife monetary relief when she

did not specifically request such relief.  For the reasons that

follow, we affirm the trial court.

## BACKGROUND

     The parties married on November 14, 1981.  Wife filed a bill

of complaint for divorce on March 16, 1988.  On June 21, 1988,

husband pled guilty to the larceny of $130,000 from his employer,

Kildahl's Jewelry (employer).  As restitution, on October 1,

          [*]Pursuant to Code § 17.116.010 this opinion is not
designated for publication.

1988, husband executed: (1) a confessed judgment note for $45,000 plus interest, and (2) a deed of trust pledging the marital residence as security for the note. Employer attempted to intervene in the divorce action, and on June 16, 1989, employer recorded the deed of trust in the land records of Fairfax County. The evidence established that wife was aware of employer's deed of trust on the marital residence.

The trial court granted wife a divorce on July 31, 1989 but retained jurisdiction over custody, spousal and child support, and equitable distribution. Upon the divorce, the parties became tenants in common of the marital residence, and employer's lien attached to husband's interest in the property. On September 28, 1989, the parties entered into a Property Settlement Agreement (Agreement). The Agreement provided, in pertinent part, as follows:

> 6. <u>Real Estate</u>. The parties are joint owners of real estate located at 8218 Running Creek Court, Springfield, Virginia. Within seven (7) days of signing this Agreement, <u>Husband shall, by appropriate deed, convey to Wife all of his right, title and interest in and to the aforesaid real estate</u>. Upon conveyance, Wife shall assume all taxes, utilities, insurance and <u>mortgage obligations on such property and hold Husband harmless thereon.</u>
>
> 7. <u>Debts</u>. Each party agrees to assume and pay all outstanding debts individually incurred by him or her whether such debt was incurred before the marriage, during the marriage or during any period of separation, and <u>each agrees to indemnify, defend and hold the other absolutely harmless from any expense, loss, claim or liability whatsoever arising from, or in any way connected with,</u>

2

> such outstanding debts, *except herein*
> *otherwise agreed*. In connection therewith,
> Husband agrees that the Sears Charge Card
> debt and the Equitable Master Charge debt are
> his sole responsibility and that he shall
> hold Wife harmless thereon. Husband agrees
> that his obligations to Wife under this
> paragraph are in the nature of spousal
> support obligation and as such are not
> dischargeable in bankruptcy as to Wife.

(Emphasis added). The trial court entered the final divorce decree on July 31, 1990, incorporating the provisions of the Agreement.

Husband deeded his interest in the marital home to wife on October 4, 1989. When wife remarried, employer asked wife to pay the note and stated it would enforce the lien and force a sale of the house if necessary. Wife and her new husband refinanced the house and paid employer $63,368.59 ($45,000 plus unpaid interest on the judgment).

Wife petitioned for a Rule to Show Cause on July 7, 1994, requesting that the court hold husband in contempt for failing to pay his separate debt to employer under Paragraph 7. The trial court held a hearing on October 6, 1994. At that hearing, wife testified that: (1) she agreed to forego child support if husband gave her the house; (2) she knew about the deed of trust to employer at the time she signed the Agreement; (3) husband told her that employer could not seek reimbursement from her; and (4) she believed that husband was responsible for his separate debt under Paragraph 7 of the Agreement. Husband testified that: (1) he knew that wife was not willing to sell the house; (2) he

3

wanted the house to pay off his obligation; and (3) he never told wife that she would be responsible for the debt.

In a November 22, 1994 order, the trial court ordered husband to pay wife $63,368.59 plus interest on $45,000. The trial court found that: (1) wife was more credible than husband; (2) the Agreement was unambiguous; (3) even if the Agreement were ambiguous, the parties intended for husband to be responsible for his separate debt to employer; and (4) wife's remarriage did not terminate husband's indemnification obligation under paragraph 7 because the obligation pre-existed the divorce and wife's remarriage.

## INDEMNIFICATION PROVISION

Husband argues that Paragraph 6 of the Agreement did not require him to convey his interest in the marital residence free and clear of the lien. Additionally, he argues that wife had notice of the lien before signing the Agreement and therefore is liable.

The trial court found that the Agreement was unambiguous and that, even if it were ambiguous, the parties intended for husband to repay his debt to employer. In interpreting Paragraph 6 of the Agreement, the trial judge stated as follows:

> Now, it's clear that there is only one mortgage if that term is used in its colloquial terms. But, the wording of that sentence is: "upon conveyance, wife shall assume all taxes, utilities, insurance and mortgage obligations."
>
> I do not read that the way that [appellant's counsel] does nor is the plain

4

meaning or the plain language used consistent with an interpretation that it means more than one mortgage.

　　　*　　*　　*　　*　　*　　*　　*

Paragraph seven is absolutely clear that each obligation that was incurred by either one of the parties during the course of the marriage or before the marriage remains his or her own responsibility and is to be taken care of by that party and that party is to hold the other harmless from any such liability.

We recognize that

[p]roperty settlement agreements entered into pursuant to a divorce proceeding are contracts; "therefore, we must apply the same rules of interpretation applicable to contracts generally."  "In reviewing the [property settlement] agreement, we must gather the intent of the parties and the meaning of the language, if we can, from an examination of the entire instrument, giving full effect to the words the parties actually used."

Smith v. Smith, 15 Va. App. 371, 374, 423 S.E.2d 851, 853 (1992) (citations omitted).  "Where there is no ambiguity in the terms of a contract, we must construe it as written, and we are not at liberty to search for the meaning of the provisions beyond the pertinent instrument itself."  Smith v. Smith, 3 Va. App. 510, 514, 351 S.E.2d 593, 596 (1986) (citations omitted).  When a contract is ambiguous, however, a court should examine parol evidence to determine the true intent of the parties.  The Anden Group v. Leesburg Joint Venture, 237 Va. 453, 458, 377 S.E.2d 452, 455 (1989).  "Ambiguity 'exists when language admits of being understood in more than one way or refers to two or more

5

things at the same time.'" Smith, 3 Va. App. at 513, 351 S.E.2d at 595 (quoting Renner Plumbing, Heating & Air Conditioning, Inc. v. Renner, 225 Va. 508, 515, 303 S.E.2d 894, 898 (1983)).

"[A]n appellate court [may] affirm the judgment of a trial court when it has reached the right result for the wrong reason . . . if 'further factual resolution is [not] needed before the right reason may be assigned to support the trial court's decision.'" Twardy v. Twardy, 14 Va. App. 651, 657, 419 S.E.2d 848, 851-52 (1992) (citations omitted). When husband executed the deed of trust pledging his interest in the residence as security for his debt, wife did not join in the execution of the note. Husband's separate debt in the form of the deed of trust later attached to the property as a lien when the parties divorced. Under Paragraph 6 of the Agreement, husband agreed to convey "all of his right, title and interest" in the marital residence to wife, and wife agreed to assume all mortgage obligations on the house and to hold husband harmless for those obligations. Thus, under Paragraph 6, wife became responsible for paying the debt to employer.

However, separate debts are separate, and under Paragraph 7, husband agreed to hold wife harmless for "any expense, loss, claim or liability whatsoever arising from, or in any way connected with, such outstanding [separate] debts." Husband's debt to his employer was clearly separate until he transferred the property to wife pursuant to the Agreement. Upon transfer,

6

wife assumed the obligation and agreed to pay employer, but husband also agreed to indemnify her for any separate debts.

Under the facts in this case, we hold that the Agreement is ambiguous because of the two competing "hold harmless" clauses in Paragraphs 6 and 7. In the Agreement, husband and wife essentially agreed to hold each other harmless for the same debt. The trial court reached the right result for the wrong reason, but specifically noted that his ruling would not change if the Agreement were found ambiguous on appeal. Therefore, we affirm the trial court.

Additionally, husband contends that the hold harmless provision in Paragraph 7 terminated upon wife's remarriage because the obligation was "in the nature of spousal support." We find this argument to be without merit. The trial court correctly found that husband's obligation to pay wife for his separate debt was an obligation that pre-existed wife's remarriage and therefore was not extinguished by her remarriage.

## MONETARY RELIEF

In wife's Petition for a Rule to Show Cause, she requested that the court find husband "in contempt of this Court; and . . . an award of attorney's fees and Court costs; and . . . such other and further relief as . . . the Court may deem proper." (Emphasis added). The trial judge quoted the language of wife's petition and found as follows:

> If there was a need to have a further explanation made of what relief was being requested, a bill of particulars could have

7

been requested . . . .

* * * * * * *

I'm going to rule on the merits of all the issues that are before the Court today instead of ruling on simply the contempt issue and having the parties have to come back and continue this litigation on another day, another time, on the same factual circumstances with different issues.

We hold that wife's request for relief in her petition encompassed the relief granted by the trial court. Therefore, the trial judge did not abuse his discretion in ordering husband to repay wife for paying his debt to employer.

Accordingly, the decision of the trial court is affirmed.

<u>Affirmed</u>.

8