# CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

Benjamin E. Proto
and Holly Proto

v.

The Futura Group, L.L.C., et al.

May 6, 2011

Case No. CL09-2455

BY JUDGE PATRICIA L. WEST

In 2005, Benjamin and Holly Proto, Plaintiffs, contracted for the construction of a new home. After they moved into their new home, Plaintiffs realized they had purchased a home with "Chinese drywall." Chinese drywall, through a process called off-gassing, emits sulfur dioxide. The sulfur dioxide smells like rotten eggs, corrodes metals, and allegedly causes serious health problems to humans after long term exposure. The Chinese drywall forced the Plaintiffs from their home and destroyed many of their personal belongings, appliances, and all of the metal components of their house.

Plaintiffs filed suit naming several defendants including Metropolitan Property and Casualty Insurance Company ("Metropolitan"). Metropolitan issued a homeowner's insurance policy on the Plaintiffs' home, but Metropolitan has refused to compensate Plaintiffs for the damages caused by the Chinese drywall. Plaintiffs' action against Metropolitan is one for declaratory judgment. Plaintiffs have asked the court to find that Metropolitan must compensate them under the homeowner's policy. Plaintiffs and Metropolitan filed cross-motions for summary judgment, and this is what the court rules on today.

"Summary judgment shall not be entered if any material fact is genuinely in dispute." Rules of Supreme Court of Virginia, Rule 3:20. The parties agree that no material facts are in dispute, and the issues before the court are solely questions of law. The court, therefore, will grant summary judgment on count XII of the complaint.

Virginia law regarding the interpretation of insurance contracts was recently summarized succinctly by the United States District Court for the Eastern District of Virginia as follows:

> In an insurance contract dispute, Virginia courts place the burden on the policyholder "to bring himself within the policy." *Maryland Cas. Co. v. Cole*, 156 Va. 707, 158 S.E. 873, 876 (1931). After the policyholder establishes a *prima facie* case, the "burden shift[s] to the defendant insurance company to prove its affirmative defense." *RML Corp. v. Assurance Co. of America*, 60 Va. Cir. 269 (2002). Policy exclusions are an affirmative defense; accordingly, "the burden is upon the insurer to prove that an exclusion applies." *Allstate Ins. Co. v. Gauthier*, 273 Va. 416, 641 S.E.2d 101, 104 (2007) (quoting *Transcontinental Ins. Co. v. RBMW, Inc.*, 262 Va. 502, 512, 551 S.E.2d 313 (2001)).
>
> Virginia courts "interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words that have been used in the documents." *Floyd v. Northern Neck Ins. Co.*, 245 Va. 153, 427 S.E.2d 193, 196 (1993). When the language of the "policy is clear and unambiguous, courts do not employ rules of construction, rather, they give the language its plain and ordinary meaning and enforce the policy as written." *Partnership Umbrella, Inc. v. Federal Ins. Co.*, 260 Va. 123, 530 S.E.2d 154, 160 (2000). If, on the other hand, the contract is found to be lacking in clarity, the "court should resort to parol evidence to ascertain the true intention of the parties." *Aetna Cas. & Sur. Co. v. The Fireguard Corp.*, 249 Va. 209, 455 S.E.2d 229, 232 (1995). Exclusionary language "will be construed most strongly against the insurer." *Allstate*, 641 S.E.2d at 104.
>
> Insurance contracts are merely another type of contract, and the court must construe a policy's terms to mean what they say. *See Pilot Life Ins. Co. v. Crosswhite*, 206 Va. 558, 145 S.E.2d 143, 146 (1965) (stating that "it is the function of the court to construe the language of the contract as written").

*Travco Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 706-07 (E.D. Va. 2010). In the case at bar, the parties agree that the damage to Plaintiffs' home is covered by the insurance policy, and the burden is on Metropolitan to prove that the exclusions to which they refer apply.

Specifically, Metropolitan points to four different exclusions contained in the insurance contract that bar Plaintiffs' claim: pollution exclusion, defective materials exclusion, corrosion exclusion, and latent defect

exclusion. Additionally, Plaintiffs claim that injuries to their children caused by the Chinese drywall are covered by the policy, and, in response, Metropolitan points to the medical exclusions. The court will address each of these exclusions in turn.

The pollution exclusion can be found on page F-2 of the contract and is controlled by the language of exclusion 1 on page F-1:

> We do not insure under any Section I coverage for any loss which would not have happened in the absence of one or more of the following excluded events . . . [regardless of] the cause of the excluded event. . . . These exclusions apply whether or not the excluded event results in widespread damage or affects a substantial area.

The pollution exclusion itself states in pertinent part:

> Pollution, meaning loss or damage to property which results directly or indirectly from: (1) discharge, dispersal, release, or escape of pollutants or contaminants, including damage caused by chemicals in the soil and loss resulting from the release of toxic materials or other pollutants or contaminants, no matter how caused . . . (3) smog, smoke from agricultural smudging, or industrial operations

Metropolitan argues that the sulfur-dioxide emitted by the Chinese drywall falls within this exclusion because sulfur-dioxide is a "pollutant" or "contaminant" within the meaning of the exclusion. Plaintiffs argue that the pollution exclusion applies only to industrial pollution or pollution from a third-party source. For Plaintiffs, the pollution exclusion applies only to environmental pollution caused by smokestacks and the like.

"In determining whether disputed contractual terms are ambiguous, we consider the words employed by the parties in accordance with their usual, ordinary, and popular meaning. No word or phrase employed in a contract will be treated as meaningless if a reasonable meaning can be assigned to it, and there is a presumption that the contracting parties have not used words needlessly." *Pocahontas Mining, L.L.C. v. CNX Gas Co., L.L.C.*, 276 Va. 346, 353 (2008) (internal citations omitted).

The language of the pollution exclusion is not ambiguous, and its plain meaning encompasses the sulfur-dioxide "released" and "discharged" by the Chinese drywall. The definition of "contaminant" is "something that contaminates," and "contaminate" means "to render unfit for use by the introduction of unwholesome or undesirable elements." *Webster's Third New International Dictionary* 491 (2002). The definition of "pollutant" is "something that pollutes; a polluting substance, medium, or agent." *Id.* at

1756. Sulfur dioxide fits into either of these definitions as it is a polluting substance and an undesirable element that rendered Plaintiffs' home unfit for use.

The plain language of the pollution exclusion also renders Plaintiffs' construction of that provision untenable. Subsection three of the pollution exclusion accounts for smog and smoke from industrial pollution. If the language of subsection one applied only to industrial pollution, then subsection three is redundant, or put differently, subsection one would be meaningless. Furthermore, the loss or damage due to the discharge or release of a pollutant or contaminant is excluded "no matter how caused." The plain language of the contract makes clear that the cause of the pollution or contamination is irrelevant. Loss or damage caused by any pollutant or contaminant from any source is excluded. The pollution exclusion is applicable to Plaintiffs' claims.

The defective materials exclusion can be found on pages F-3 and F-4 of the contract and is part of exclusion 2. The defective materials exclusion reads in pertinent part:

> We do not insure under Coverage A and Coverage B for any loss consisting of one or more of the items below . . . defective, inadequate, faulty, or unsound . . . materials used in repair, construction, renovation, or remodeling . . . of any property whether on or off the residence premises.

The plain language of the defective materials exclusion excludes damage caused by the Chinese drywall because the drywall is a material used in construction of the property.

Plaintiffs argue that the entirety of exclusion 2 is controlled by the provision dealing with weather under subsection C because that subsection is set off from the rest of the language. The court construes the set off provision under subsection C as applying only to subsection C, which states "weather conditions." The court does not think it is reasonable to construe exclusion 2 as excluding things like zoning, design, materials, maintenance, etc. only if the weather is also bad at the same time. The defective materials exclusion is applicable to Plaintiffs' claims.

The corrosion exclusion can be found in exclusion 3 on page F-4 of the contract. The corrosion exclusion reads in pertinent part, "we do not cover loss or damage to the property described in Coverage A, Coverage B, and Coverage C which results directly or indirectly from any of the following . . . corrosion." The plain language of this exclusion works to exclude coverage for everything corroded by the sulfur-dioxide. Examples include silverware, refrigerator coils, HVAC ducts, electrical wiring, and everything else that corroded as a result of the Chinese drywall's off-gassing.

The latent defect exclusion is found in the same provision as the corrosion exclusion. A latent defect is defined as "a defect not manifest, but hidden or concealed, and not visible or apparent; a defect hidden from knowledge as well as from sight; specifically, a defect which reasonably careful inspection will not reveal; one which could not have been discovered by inspection." *Glen Falls Ins. Co. v. Long*, 195 Va. 117, 77 S.E.2d 457 (1953). The defect in the Chinese drywall is latent because it is not immediately discoverable upon inspection. Only the passage of time reveals this defect. The latent defect exclusion is applicable to Plaintiffs' claims.

Plaintiffs point to the ensuing loss provision as a means of restoring coverage, but this provision can be of no avail to Plaintiffs for two reasons. "First, none of the losses claimed qualify as 'ensuing' losses. An ensuing loss is a loss that occurs subsequent in time to an initial loss. Second, even if the losses to the components of the [Plaintiffs' home] could somehow be characterized as 'ensuing losses,' they would still be losses ['excluded by any other provision in this policy'] specifically, the corrosion exclusion." *Travco*, 715 F. Supp. 2d at 718-19.

The medical coverage provision can be found in Section II: Loses We Cover on page I-2 of the contract. This provision states, "[t]his coverage does not apply to you." "You" is defined in the contract as the person or persons named in the Declarations and if a resident of the same household . . . the relatives of either." The word "you" as used in the insurance contract includes the parties' children, and as a result, the children are not covered. Furthermore, the medical coverage has, on page I-2, its own pollution exclusion that operates in the same manner as the Section I pollution exclusion previously discussed.

While the court has great sympathy for the Plaintiffs and their dilemma, Metropolitan has met its burden of proving that the exclusions contained in the insurance contract exclude all of Plaintiffs' claims, and the court finds no ambiguity in the relevant parts of the insurance contract. Accordingly, summary judgment is granted in favor of Metropolitan, and count XII of the complaint is dismissed.